# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 13, 2001 Session

## PLANTERS GIN COMPANY v. FEDERAL COMPRESS & WAREHOUSE COMPANY, INC., ET AL.

**Appeal from the Court of Appeals, Western Section**
**Circuit Court for Shelby County**
**No. 88907-5 T.D.     Kay S. Robilio, Judge**

---

### No. W1999-02460-SC-R11-CV - Filed July 9, 2002

---

This appeal from a denial of summary judgment arises from a contract dispute between Planters Gin Company and Federal Compress & Warehouse Company, Inc. Federal Compress & Warehouse Company, Inc. leased warehouse space to Planters Gin Company. At issue is whether an indemnity clause holding Federal Compress & Warehouse Company, Inc. harmless for "any liability or loss" arising out of the "use of the premises" and requiring Planters Gin Company to carry insurance on the contents stored in the warehouse bars recovery against Federal Compress & Warehouse Company, Inc. for damages caused by negligence occurring in an adjacent storage compartment. We find the contract unambiguous and valid. Accordingly, we hold that the indemnity provision limiting Federal Compress & Warehouse Company, Inc.'s liability is enforceable and bars recovery under the facts of this case. The Court of Appeals's judgment against Federal Compress & Warehouse Company, Inc. is reversed, and the judgment of the trial court is reinstated.

**Tenn R. App. P. 11, Appeal as of Right; Judgment of the Court of Appeals Reversed**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which Frank F. Drowota, III, C.J., E. Riley Anderson, Janice M. Holder, and WILLIAM M. BARKER, JJ. joined.

Michael B. Neal and Daniel W. Van Horn, Memphis, Tennessee, for the appellant, Federal Compress & Warehouse Company, Inc.

Allan B. Thorp, Memphis, Tennessee, for the appellee, Planters Gin Company.

### OPINION

### I. Facts and Procedural History

Federal Compress & Warehouse Company, Inc. (Federal Compress) is in the business of warehousing cotton; it stores this cotton for cotton gins and cotton farmers under bailment contracts.

Additionally, a small portion of its business is from leasing warehouse space to tenants. Federal Compress has warehouse facilities in five different states, one of them being the Bodley Plant in Memphis, Tennessee.

The Bodley Plant consists of a 228,000 square foot warehouse built in the 1920s. It is divided into seven interconnected compartments. Though initially referred to as "sheds," the company began referring to the individual compartments as "buildings." Each compartment shares common walls with at least one other unit. The walls between the units are firewalls; internal doors connect the compartments. The plant is serviced by one parking lot, one loading dock, and one rail spur.

The compartments are numbered one through seven.[1] Compartments one through three, being in somewhat of a triangular arrangement, all share common walls and a common sprinkler system. It is these three compartments, referred to in the contract documents as "buildings," that are at issue in this case.

On August 22, 1994, Planters Gin Company (Planters Gin) entered into a contract leasing compartments one and two (approximately 61,000 square feet) from Federal Compress and used these units to store cotton. The adjoining compartment three was neither leased nor used to store cotton at the time in issue. As in all of Federal Compress's leasing agreements, Planters Gin, the tenant, was responsible for insuring the contents warehoused at the plant. The lease also required that this insurance coverage contain a waiver of subrogation clause as to Federal Compress.[2] Planters Gin maintained an insurance policy on its stored cotton;[3] the insurance on the building's physical structure was maintained by Federal Compress. Under the leasing agreement, the maintenance of the water sprinkler system was also the obligation of Federal Compress.

Between 8 p.m. and 9 p.m. on Sunday, October 27, 1996, heavy rainfall from a storm caused the roof to collapse over compartment three. The weight of the collapsed roof caused a water pipe in the sprinkler system to break. Water from the pipe and rainwater poured onto the floor of compartment three and seeped through the wall and doors into compartments one and two. Though

---

[1] Compartment four did not exist at the time of this suit, having been torn down for a parking lot.

[2] As mentioned previously, most of the cotton warehoused with Federal Compress was held under a bailment contract; Federal Compress was responsible for insuring the cotton it held as bailee. The analysis of this opinion does not affect the law controlling bailment relationships; we address the liability issue before us solely in the context of a leasehold contract.

[3] The "marine open cotton policy" obtained by Planters Gin is the usual policy by which cotton merchants or others in the cotton industry insure cotton which they own. Such policies insure cotton while in warehouses, in compress yards, on wharves, on levees, or elsewhere on the land. Though this particular policy allowed the insurer to void the insurance if any agreement by Planters Gin impaired the insurer's rights to seek recovery for loss from a third party, under an optional provision, the insurer chose to cover the losses and pursue recovery against the named defendants.

Federal Compress had contracted with Wells Fargo Alarm Services, Inc. (Wells Fargo) to immediately notify the company of any water released through the sprinkler pipe system, no notification call was made by Wells Fargo. Consequently, the broken pipe and the resulting flooding of the affected compartments was not discovered until the next morning at approximately 6 a.m. By that time, the stacks of Planters Gin's cotton in compartments one and two had absorbed the water and were damaged in the alleged amount of $250,000.

Planters Gin, acting on behalf of its insurance carrier, filed a complaint grounded on negligence against both Federal Compress and Wells Fargo. Planters Gin alleged that Federal Compress was negligent in both the maintenance of the roof over compartment three and in monitoring its sprinkler system. Both defendants denied liability for the damage to the cotton and filed motions for summary judgment. The trial court found that the contract between Federal Compress and Wells Fargo created no duty to Planters Gin on the part of Wells Fargo. It also found that the indemnity clause in the leasing contract between Federal Compress and Planters Gin prevented recovery against Federal Compress for damage to the cotton. Accordingly, both defendants were granted summary judgment.

On appeal to the Court of Appeals, the summary judgment granted to Wells Fargo was upheld. However, after holding that the indemnity clause in the lease between Federal Compress and Planters Gin limited only that liability associated with the lease of compartments one and two, the Court of Appeals found that the damages arose out of Federal Compress's maintenance of compartment three. Consequently, it reversed the summary judgment granted to Federal Compress. Both Planters Gin and Federal Compress requested permission to appeal. This Court granted Federal Compress permission to appeal; because Planters Gin's application was denied, Wells Fargo is no longer a party to this case.

## II. Standard of Review

The issues accepted for review by this Court are limited to the legal effect of the contractual provisions allocating risk between Federal Compress and Planters Gin. This case comes to the Court on a motion for summary judgment, a procedure utilized in cases where a just and speedy determination may be reached without the expense of trial. See Evco Corp. v. Ross, 528 S.W.2d 20, 24-25 (Tenn. 1975). Summary judgment is appropriate, however, only if the moving party demonstrates that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; Webber v. State Farm Mut. Auto. Ins. Co., 49 S.W.3d 265, 269 (Tenn. 2001); Byrd v. Hall, 847 S.W.2d 208, 210-11 (Tenn. 1993). Because summary judgment involves only questions of law or the application of the law to certain facts, the trial court's grant of summary judgment in this case is given a de novo review without any presumption that the trial court's conclusions were correct. Cowden v. Sovran Bank/Central South, 816 S.W.2d 741, 744 (Tenn. 1991).

## III. Contract Construction

The legal effect of the terms of a lease are governed by the general rules of contract construction.  Cf. Waddle v. Lucky Strike Oil Co., 551 S.W.2d 323, 326 (Tenn. 1977).  Thus, the outcome of this case rests on a contractual interpretation of the leasing agreement between Federal Compress and Planters Gin.  In "resolving disputes concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language."  Guiliano v. Cleo, Inc., 995 S.W.2d 88, 95 (Tenn. 1999).  This determination of the intention of the parties is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide.  5 Joseph M. Perillo, Corbin on Contracts, § 24.30 (rev. ed. 1998); Doe v. HCA Health Services of Tenn., Inc., 46 S.W.3d 191, 196 (Tenn. 2001).

A court's initial task in construing a contract is to determine whether the language of the contract is ambiguous.  Once found to be ambiguous, a court applies established rules of construction to determine the parties' intent.  "Only if ambiguity remains after the court applies the pertinent rules of construction does [the legal meaning of the contract] become a question of fact" appropriate for a jury.  Smith v. Seaboard Coastline R.R. Co., 639 F.2d 1235, 1239 (5ᵗʰ Cir. 1981).  Finding no such ambiguity in the contract between Federal Compress and Planters Gin, the issues presented to this Court are suitable for determination by summary judgment.

## IV.  Analysis

The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern.  Empress Health & Beauty Spa, Inc. v. Turner, 503 S.W.2d 188, 190 (Tenn. 1973).  The intent of the parties is presumed to be that specifically expressed in the body of the contract.  "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used  and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy."  17 Am. Jur. 2d, Contracts, § 245, quoted in Turner, 503 S.W.2d at 190.  If clear and unambiguous, the literal meaning of the language controls the outcome of contract disputes.

Nonetheless, a contractual provision may be susceptible to more than one reasonable interpretation, which renders the terms of the contract ambiguous.  Memphis Housing Auth. v. Thompson, 38 S.W.3d 504, 512 (Tenn. 2001), cert. denied, ___ U.S. ___, 122 S. Ct. 59 (2001).  "A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one."  Turner, 503 S.W.2d at 190-91.  Where the terms of the contract are ambiguous, the intention of the parties cannot be determined by a literal interpretation of the language, and the courts must resort to other rules of construction.

Here, the language at issue is found in paragraph 25 of the leasing agreement. Captioned "Damages and Accidents," this paragraph requires Planters Gin to insure the contents of the leased

-4-

premises, to waive subrogation of its rights to recoupment as to Federal Compress,[4] and to indemnify Federal Compress against liability for loss:

> Lessee agrees to hold harmless and indemnify Lessor from and against any liability or loss, including counsel fees incurred in good faith by the Lessor, arising out of any cause associated with Lessee's business or use of the premises. In addition, Lessee agrees to provide public liability insurance naming Lessor as additional insured to protect Lessor from risks customarily covered by such insurance, in amounts not less than $250,000 per person and $500,000 per accident, and $100,000 for damage to property. Lessee also shall carry contents coverage on its contents with a waiver of subrogation clause as to Lessor.

The Court of Appeals found this language ambiguous as to this incident. Had the roof over compartments one or two collapsed, the Court of Appeals apparently would have upheld the trial court's finding that this provision barred recovery for damage to the cotton. Instead, the court found this provision unclear as to the allocation of liability for damages caused by negligence occurring outside of the specific area leased–in this case, occurring in compartment three. Because it found the language of paragraph 25 susceptible to more than one reasonable interpretation, it considered the provision ambiguous. Utilizing rules of construction and relying on the case of Interested Underwriters at Lloyd's v. Ducors, Inc.,[5] it found that the limitation on liability provision was only applicable to damages arising out of negligence relating to the maintenance of the two compartments leased to Planters Gin. Accordingly, it held that the indemnity clause did not bar this action.

We, however, find no ambiguity in the contract at bar. The language provides that Planters Gin "agrees to hold harmless" Federal Compress for "any liability or loss . . . arising out of . . . use of the premises." The meaning of this provision is inescapable, particularly given the language by which Planters Gin agrees to provide insurance to cover the contents stored in the warehouse with

---

[4]The effect of the waiver of subrogation clause is that the insurer is not allowed to seek reimbursement from Federal Compress for insurance proceeds paid to Planters Gin.

> Subrogation is defined as "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." Castleman Constr. Co. v. Pennington, 222 Tenn. 82, 432 S.W.2d 669, 674 (1968) (citation omitted). In the context of insurance, subrogation allows the insurer to "stand in the shoes" of the insured and assert the rights the insured had against a third party.

York v. Sevier County Ambulance Auth., 8 S.W.3d 616, 618-19 (Tenn. 1999); Blankenship v. Estate of Bain, 5 S.W.3d 647, 650 (Tenn. 1999); see also 11 John Alan Appleman and Jean Appleman, Insurance Law and Practice § 6501 (1981).

[5]478 N.Y.S.2d 285 (App. Div. 1984), aff'd, 481 N.E.2d 252 (N.Y. 1985).

a waiver of subrogation rights as to claims against Federal Compress. Nothing in the contract limits this allocation of risk or suggests that this allocation of risk is contingent on the location of Federal Compress's alleged act of negligence.

> "If the language used by the parties is plain, complete, and unambiguous, the intention of the parties must be gathered from that language, and from that language alone . . . ." A strained construction may not be placed on the language used to find ambiguity where none exists.

Turner, 503 S.W.2d at 190-91 (quoting 17 Am. Jur.2d Contracts § 245); see also Johnson v. Johnson, 37 S.W.3d 892, 896 (Tenn. 2001); Farmers-Peoples Bank v. Clemmer, 519 S.W.2d 801, 805 (Tenn. 1975).

We are not convinced by the argument that the indemnity clause is not applicable because the negligence occurred on property which was not the subject of the lease. To support this argument, Planters Gin relies on Ducors, 481 N.E.2d at 285. In Ducors, the defendant owned two adjoining commercial buildings. In contrast to the case before us, they constituted two distinct premises with two distinct street addresses. A fire originating in the vacant building resulted in a loss to the tenant of the adjoining building. Though there was an exculpatory provision waiving recovery against the landlord, the court found the provision inapplicable because the alleged negligence in the adjoining building was "completely extraneous to any duty or obligation encompassed by the parties' agreement . . . ." Ducors, 478 N.Y.S.2d at 286-87. It construed the lease to "limit the risks to be allocated . . . to those which arise out of the landlord's ownership and the tenant's use and occupancy of the demised premises." Id. at 287. That court found the negligence to be "committed by a third-party who happens to be the landlord." Id.; see also W. F. Zimmerman, Inc. v. Daggett & Ramsdell, Inc., 111 A.2d 448, 450 (N.J. 1955) ("negligence in the operation of the [landlord's unrelated] commercial enterprise" was outside the limitation of liability anticipated by exculpatory clause).

Though it may be possible that some negligent acts by a landlord could be so remote to the landlord/tenant relationship as to render the coverage of an otherwise applicable indemnity clause ambiguous, the failure of a commercial landlord to maintain the roof over the adjoining compartment in a cotton warehouse does not fall within such an exception. As stated in Butler Manufacturing Co. v. Americold Corp., "[t]he plain language of the exculpatory provisions focuses on the location of the property which is damaged, not on the situs . . . of defendants' allegedly negligent conduct." 841 F. Supp. 1107, 1111 (D. Kan. 1993). If plain, it is the language of the contract that will control the breadth of an indemnity clause. For example, in Smith v. Seaboard Coast Line Railroad Co., 639 F.2d 1235, 1241 (5ᵗʰ Cir. 1981), the court found that damage to a tenant's building located on property adjoining the leasehold was covered by an indemnity clause in the lease. In Seaboard Coast Line, the tenant owned a building complex in which one shed was located on property leased from the railroad. A fire started in this shed and then spread to a building on the tenant's property. The court held that the language in the lease indemnifying the landlord for "damage to property caused

by or in any way connected with . . . use of the leased premises" barred recovery for damages to the building located on the tenant's property. Id.

Nor is such an indemnity provision contrary to any rule of law or public policy. Historically, the "freedom of contract" has insured "that parties to an agreement have the right and power to construct their own bargains." Blake D. Morant, Contracts Limiting Liability: A Paradox with Tacit Solutions, 69 Tul. L. Rev. 715, 716 (1995). As with other types of contracts, the "terms of a lease should be binding on the parties thereto unless there is some overriding social policy that would be undermined by their enforcement." Restatement (Second) of Property, § 5.6 (1977). This Court has consistently recognized that the right of parties to allocate liability for future damages through indemnity clauses, generally, is not contrary to public policy. See Crawford v. Buckner, 839 S.W.2d 754, 756 (Tenn. 1992); Houghland v. Security Alarms & Services, Inc., 755 S.W.2d 769, 773 (Tenn. 1988) (liability of burglar alarm service was limited by an exculpatory clause); Turner, 503 S.W.2d at 191-92 (customer assumed the risk of injury from negligence of a health spa); Chazen v. Trailmobile, Inc., 384 S.W.2d 1 (Tenn. 1964) (commercial lease absolved both landlord and tenant from liability for a loss resulting from fire); Moss v. Fortune, 340 S.W.2d 902 (Tenn. 1960) (renter assumed the risk incident to injury from the hiring and riding of a horse). Indeed, the allocation of risk agreed to by parties with equivalent bargaining powers in a commercial setting serves a particularly valid purpose where, as here, the contract delineates the parties' duty to obtain and bear the cost of insurance. See Evco Corp. v. Ross, 528 S.W.2d 20, 23 (Tenn. 1975); Kellogg Co. v. Sanitors, Inc., 496 S.W.2d 472, 473 (Tenn. 1973). Thus, even broad transfers of liability, where unambiguous, should be honored.

This freedom to limit liability by contract is subject to some exceptions. By statute, indemnity agreements relative to construction contracts are deemed void as against public policy, Tenn. Code Ann. § 62-6-123 (1997), and residential rental agreements in certain counties may not limit the liability of the landlord or indemnify the landlord for liability. Tenn. Code Ann. § 66-28-203(a)(2)(1993). Our Court has also found indemnity or exculpatory clauses violate public policy in certain distinct fact situations. In Crawford, we held that an exculpatory clause in a residential lease releasing a landlord from liability for future acts of negligence, even when executed in a county not covered by Tenn. Code Ann. § 66-28-203, is void as contrary to public policy. 839 S.W.2d at 760. And in Olson v. Molzen, 558 S.W.2d 429, 431 (Tenn. 1977), we held an exculpatory contract signed by a patient as a condition of receiving medical treatment was contrary to public policy and void. Furthermore, we have found indemnity clauses are invalid as to damages caused by gross negligence or willful conduct on the part of the indemnified party. Adams v. Roark, 686 S.W.2d 73, 75-76 (Tenn. 1985); see William K. Jones, Private Revision of Public Standards: Exculpatory Agreements in Leases, 63 N.Y.U.L. Rev. 717, 732 (1988). No such policy considerations are present in the case before us.

## V. Conclusion

The contract before the Court is unambiguous and contravenes no statute or principle of public policy. Accordingly, we hold that the indemnity provision limiting Federal Compress's

liability is enforceable and bars recovery under the facts of this case. The Court of Appeals's judgment against Federal Compress is reversed, and the judgment of the trial court is reinstated. Costs of appeal are taxed to Planters Gin Company, for which execution may issue if necessary.

_____
ADOLPHO A. BIRCH, JR., JUSTICE