IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 4, 2003 Session

## CITY OF WHITWELL, TENNESSEE v. WEST VALLEY WATER SYSTEM, INC.

**Direct Appeal from the Chancery Court for Marion County**
**No. 6731     Jeffrey F. Stewart, Chancellor**

---

**No. M2002-02959-COA-R3-CV - Filed November 3, 2003**

---

This is a contract dispute between the plaintiff, an incorporated municipality, and the defendant, a nonprofit water systems corporation that supplied water to residents living outside the city limits. The parties entered into several agreements for the sale of potable treated water from the plaintiff to the defendant, the specific terms for which varied under each agreement. In particular, a 1981 agreement placed limits on the defendant's ability to assign its rights under the contract and required that the defendant purchase all its water requirements up to eight million gallons per month from the plaintiff, while an agreement executed in 1994 contained no minimum purchase requirement for the defendant and expressly provided that successors to the defendant, "whether the result of legal process, assignment, or otherwise," succeeded to the rights of the defendant under the contract. In 2002, the defendant entered into negotiations for the sale of its assets to a third party water company. In response, the plaintiff filed a petition for injunctive relief, alleging, *inter alia*, that the contract between the parties did not allow the defendant to assign its rights without the plaintiff's prior consent and that the City would suffer irreparable harm if deprived of the income generated by its water sale to the defendant. Following an injunction hearing and a subsequent trial, the trial court ruled, *inter alia*, that the 1994 contract superceded the previous agreements between the parties and the defendant was free to transfer its assets to the third party water company without the plaintiff's consent. The plaintiff appeals, arguing the 1994 contract was *ultra vires* because its mayor lacked the authority to execute it, there was no meeting of the minds to form a valid contract between the parties, and the trial court abused its discretion in dissolving the temporary injunction and denying the City's request for a permanent injunction. Having reviewed the entire record in this case, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Chancery Court Affirmed**

ALAN E. GLENN, SP.J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and PATRICIA J. COTTRELL, JJ., joined.

Jennifer Austin Mitchell, Dunlap, Tennessee, for the appellant, City of Whitwell, Tennessee.

William L. Gouger, Jr., Jasper, Tennessee, for the appellee, West Valley Water System, Inc.

## OPINION

## FACTS AND PROCEDURAL HISTORY

In 1970, the plaintiff/appellant, the City of Whitwell ("the City"), and the defendant/appellee, West Valley Water System, Inc. ("West Valley"), entered into a "Water Purchase Contract" in which the City agreed to sell to West Valley potable treated water for West Valley to supply to its customers living outside the city limits. The 1970 agreement provided, *inter alia*, that the contract would extend for forty years, that West Valley would pay the City at the rate of $.35 per one thousand gallons, and "[t]hat in the event of any occurrence rendering the Purchaser incapable of performing under this contract, any successor of the Purchaser, whether the result of legal process, assignment, or otherwise, shall succeed to the rights of the Purchaser hereunder." The contract additionally provided that the rates to be paid by West Valley were subject to modification every three years and that other provisions of the contract could be modified or altered upon the mutual agreement of the parties. The contract was executed on the City's behalf by its mayor and attested by the city recorder. The President of West Valley signed the contract on behalf of West Valley. Prior to execution, the City's Board of Commissioners and West Valley's Board of Directors each passed resolutions approving of the contract and authorizing the mayor and the West Valley president to execute the contract on their respective parties' behalf.

On September 29, 1981, the parties entered into an agreement entitled "Contract," which specifically stated that the 1970 contract remained in full force and effect and that the parties' current agreement was an addendum to modify certain of the terms of the 1970 contract. Among the terms modified was West Valley's ability to assign its rights under the contract to a third party. Specifically, section 9 of the 1981 contract states as follows:

> Without the prior written consent of the Seller, neither this contract, nor any interest herein, nor any claim arising hereunder, shall be transferred or assigned by the Purchaser to a parent, subsidiary, affiliate corporation, or to a successor corporation with which the Purchaser shall have been consolidated or merged or which acquires by conveyance, transfer, or condemnation all or substantially all of the Purchaser's water system serving the County of Marion and territory adjacent thereto.

In addition, the 1981 contract contained a provision whereby West Valley agreed to purchase all the water it required, up to eight million gallons per month, from the City. Section 1 of the agreement states:

> Subject to the terms, conditions and limitations hereinafter set forth, the Seller agrees to sell and deliver to the Purchaser, and the

-2-

> Purchaser agrees to purchase and receive from the [S]eller, all water required by the Purchaser to meet the water requirements of its customers in the Purchaser's service area, but said amount of water is not to exceed eight million (8,000,000) gallons of water per month.

The Board of Directors of West Valley and the Board of Commissioners of the City each passed separate resolutions approving and authorizing the execution of the 1981 contract.

On May 9, 1994, the parties entered into a third agreement, entitled "Water Purchase Contract," which again provided for the sale of treated water from the City to West Valley. The 1994 contract essentially tracked the language of the 1970 agreement, including the contract term of forty years. Included among the terms of the 1994 contract is a "Successor to the Purchaser" section, which mirrors the language contained in the 1970 contract and states as follows: "That in the event of *any* occurrence rendering the Purchaser incapable of performing under this contract, any successor of the Purchaser, whether the result of legal process, assignment, or otherwise, shall succeed to the rights of the Purchaser hereunder." (emphasis added). The 1994 contract contains no minimum purchase requirement for West Valley. This contract was executed by the President of West Valley and by Billy Joe Smith, who was the City's mayor at the time. It was attested by the City Recorder and by the Secretary of West Valley.

As with the previous contracts, the Board of Directors of West Valley and the Board of Commissioners of the City passed separate resolutions approving the 1994 contract and authorizing the mayor and the West Valley president to execute the agreement on the behalf of the City and West Valley. However, while the West Valley resolution specifically referred to the agreement as a new contract that superceded the previous agreements between the parties, the City's resolution referred to it as a contract which altered the previous contract by increasing the price of water and extending the contract term.

On July 23, 2002, the City filed a petition for an *ex parte* temporary restraining order in the Chancery Court of Marion County, alleging that West Valley had recently entered into an agreement to sell its assets to Tennessee American Water Company ("Tennessee American"), but had not obtained the prior written consent of the City and had not demonstrated that it was incapable of performance under its contract with the City. The City further alleged that Tennessee American had not agreed to assume any of the liabilities, obligations, or debts arising under West Valley's water purchase contract with the City, which included West Valley's agreement to purchase water from the City at a specified rate or any judgment that should result from the City's pending lawsuit against West Valley for its failure to make payments according to the terms of the contract. The City alleged it would suffer immediate and irreparable economic harm if the transfer were allowed to proceed and, therefore, requested that the court issue a temporary restraining order prohibiting West Valley from "either merging, selling, assigning, entering into any agreements, or conducting any transactions that would assign any of the assets, liabilities or responsibilities" to another company, and that it make the temporary restraining order permanent following the hearing on the matter.

The trial court issued a temporary restraining order on July 23, 2002, and set a hearing for July 30 to determine if a temporary injunction should issue pending the trial of the matter. In addition to receiving into evidence the various contracts and resolutions approving the contracts which had been passed by the parties, the trial court heard testimony from several witnesses at the July 30 hearing, including Chris Morrison, the current City manager, and Clinton Garner, the Chairman of the Board of West Valley. Morrison testified the City received approximately $200,000 per year from its water sale to West Valley, which included a profit margin of 15%, for a net of approximately $30,000.[1] He said the City relied on the water sale profit for a substantial portion of its operating revenue and would suffer economic hardship, in the form of a budget shortfall, should West Valley transfer its assets to Tennessee American and the latter choose not to honor the water purchase contract with the City. He testified West Valley had not sought permission from the City to transfer its assets to Tennessee American and had not provided any proof of its inability to continue its performance under the contract. He also stated that the City currently had a separate lawsuit pending against West Valley over disputed water payments, in which it was seeking $32,000.

Garner confirmed West Valley and Tennessee American had recently entered into negotiations for Tennessee American's purchase of West Valley's assets and conceded that, under the terms of their proposed purchase agreement, Tennessee American had not agreed to assume responsibility for any judgment the City might receive in its pending lawsuit against West Valley, or West Valley's obligation under the contract to purchase water from the City at a specified rate. Garner testified West Valley's water lines contained numerous leaks through which it was currently losing approximately 42% of the water it purchased from the City. He said West Valley was unable to afford the estimated $600,000 in repair costs and would be able to continue its operation for only six to eight more months under the current conditions.

At the conclusion of the hearing, the trial court converted the temporary restraining order into a temporary injunction and set a September 10 trial date to hear additional evidence in the matter. Among the witnesses who testified at trial was Tennessee American's Director of Business Development, Harold Speight Overman,[2] who testified that, should the purchase go through, his company intended to honor the terms of the 1994 water purchase contract between the City and West Valley and that he had expressed that intention to the City's Board at a recent City meeting. Overman acknowledged Tennessee American pumped water out of the Tennessee River to provide to some of its current customers, but denied that the company was exploring ways of providing water to the West Valley Water System from the Tennessee River. Asked if Tennessee American would commit to purchasing all of its water for the West Valley Water System from the City for the next thirty-two

---

[1]At the September 10, 2002, trial, the City's certified public accountant, Cleta Andrews, testified that the previous fiscal year the City had grossed $184,518 from its water sales to West Valley, of which $23,958 was profit. She said that the sales to West Valley constituted 30% of the City's total water sales and that the loss of the West Valley sales would create a hardship for the City.

[2]Although this witness's middle name appears as "Spate" in the trial transcript, the defendant's counsel has informed us in his brief that the correct spelling is "Speight."

years, Overman reiterated that Tennessee American was willing to abide by the terms contained in the 1994 agreement between the City and West Valley.

After taking the matter under advisement, the trial court issued an oral ruling on September 26, 2002, followed by a written order entered on October 25, 2002. The trial court found that the 1994 contract between the parties, which was the most recent, superceded the parties' previous contracts and was the "controlling, prevailing, and enforceable contract between said parties." The trial court further found that the language of the 1994 contract contained no basis for the injunctive relief requested by the City. However, the court also found that the City's pending lawsuit for damages against West Valley "create[d] a legitimate possibility for irreparable harm to the City of Whitwell and as such represent[ed] a basis for injunctive relief," but that the basis could be eliminated and the injunction lifted upon West Valley's posting of a $32,000 bond. From this order, the City now appeals.

## ANALYSIS

The City raises three issues on appeal: (1) whether the trial court erred in ruling the 1994 contract enforceable when the City's mayor lacked the authority to execute the contract; (2) whether the trial court erred in finding the 1994 contract valid when there was no meeting of the minds in its formation; and (3) whether the trial court erred in failing to issue a permanent injunction against West Valley.

Our review of these issues is governed by Tennessee Rule of Appellate Procedure 13(d), which provides that review of findings of fact by the trial court shall be *de novo* upon the record, accompanied by a presumption of correctness of the trial court's factual findings, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); Union Carbide Corp. v. Huddleston, 854 S.W.2d 87, 91 (Tenn. 1993). Our review of the trial court's conclusions of law, including its interpretation of the contracts between the parties, is *de novo* on the record with no presumption of correctness. Id.

The City first contends the 1994 contract was *ultra vires* and therefore void or voidable. A municipality may exercise only those expressly or necessarily implied powers delegated to it by the Legislature in its charter or under statutes. City of Lebanon v. Baird, 756 S.W.2d 236, 241 (Tenn. 1988) (citations omitted). When a municipality fails to act within its charter or under applicable statutory authority, the action is considered *ultra vires*, or beyond the scope of its powers, and is therefore void or voidable. Id. (citing Crocker v. Town of Manchester, 156 S.W.2d 383, 384 (Tenn. 1941)). The Baird court described the two circumstances in which a municipal action may be found *ultra vires*:

> Under Tennessee law, a municipal action may be declared *ultra vires* for either of two reasons: (1) because the action was wholly outside the scope of the city's authority under its charter or a statute, or (2) because the action was not undertaken consistent with the mandatory

-5-

provision of its charter or a statute. Thus, the law recognizes a difference between the existence of a municipal power and the manner of mode of exercising municipal power legitimately.

Id.

The City's authority to enter into the water purchase contract is not at issue. Instead, the City argues that the contract was not properly authorized by it. In support of this argument, it relies upon the 1994 resolution passed by the City's Board of Commissioners, which referred to the 1994 contract as altering the previous contract between the parties by increasing the price and extending the contract term. The City argues that because the 1994 contract altered more than the price and contract term mentioned in the City's resolution, the mayor could not legitimately execute it on the City's behalf. West Valley responds, *inter alia*, that the language of the City's resolution, which references the 1994 contract, makes clear that the City's Board had the opportunity to review the contract and intended by its resolution to authorize the mayor to adopt it in its entirety.

The 1994 resolution passed by the City's Board of Commissioners states:

> WHEREAS, the City of Whitwell has heretofore been contacted by the West Valley Water System, Inc. for the purpose of extending the contract for the sale of water by the City of Whitwell to the West Valley Water System, Inc. and which will effectuate an increase in the sale of water to the said West Valley Water System, Inc. and increase initial contract terms for a total of forty (40) years and the said West Valley Water System, Inc. requests that the City of Whitwell execute said agreement for the purposes therein contained.

> WHEREAS, the said West Valley Water System, Inc. has presented to the City of Whitwell a proposed contract altering the initial contract as aforesaid increasing the price of the sale of water by the City of Whitwell to the West Valley Water System, Inc., and extending the term of the initial contract to forty (40) years and it appearing to the Commission of the City of Whitwell that it is to the best interest of the City of Whitwell that the same be accepted.

> THEREFORE, BE IT RESOLVED that the City of Whitwell accept the contract submitted by the West Valley Water System, Inc. setting forth therein the items hereinabove set forth and which contract is attached hereto and incorporated by reference.

> This 5th day of May, 1994.

While the resolution mentions only two of the alterations effectuated in the 1994 contract, it specifically states that West Valley "presented to the City of Whitwell a proposed contract," that the Commission concluded it was in the best interests of the City that "the same be accepted," and that the City "accept the contract submitted . . . which contract is attached hereto and incorporated by reference." As West Valley points out, there is nothing in the record to suggest that the contract submitted to the City and referenced in the resolution was different from the 1994 contract signed by the City's mayor. Nor is there anything in the record to show that the resolution, which contains the signatures of five City Commissioners and the City Recorder, was improperly passed. We, therefore, conclude that the mayor's execution of the 1994 contract was not *ultra vires*, as the City argues.

The City next contends the 1994 contract is invalid because there was no meeting of the minds in its formation. In support, it again cites the 1994 resolution passed by the City's Commissioners to argue that the City's intention in entering into the 1994 agreement was solely to modify the previous agreement by extending the contract term and increasing the water price. West Valley responds that the respective resolutions passed by the parties, as well as the unambiguous language of the contract, clearly evidence that it was the intention of both the City and West Valley to enter into a new contract by executing the 1994 agreement.

The cardinal rule in interpreting a written contract is to ascertain and give effect to the intention of the parties. Planters Gin Co. v. Federal Compress & Warehouse Co., 78 S.W.3d 885, 890 (Tenn. 2002). "The intent of the parties is presumed to be that specifically expressed in the body of the contract." Id. Therefore, if the contract's language is clear and unambiguous, "the literal meaning of the language controls the outcome of contract disputes." Id. It is only when a contract is "'of uncertain meaning and may fairly be understood in more ways than one'" that a court must turn to other rules of construction to determine the intent of the parties. Id. (quoting Empress Health & Beauty Spa, Inc. v. Turner, 503 S.W.2d 188, 190-91 (Tenn. 1973)). "When the language of the contract is plain and unambiguous, the court must determine the parties' intention from the four corners of contract, interpreting and enforcing it as written." Simonton v. Huff, 60 S.W.3d 820, 825 (Tenn. Ct. App. 2000) (footnote omitted).

We find no ambiguity in the contract at issue in this case. The 1994 agreement between the parties states that it is a contract for the sale and purchase of water entered into between the parties on the 9th day of May, 1994, that has been approved and authorized by resolution of the City of Whitwell and by resolution of the Board of Directors of West Valley. The contract then sets forth the various terms and provisions of the parties' agreement, which, as the trial court noted in its oral findings of fact, essentially duplicate the terms contained in the original 1970 contract. Unlike the 1981 agreement, which states it is an addendum to modify the 1970 contract, which "is still in full force and effect," the 1994 contract contains no language to suggest it is anything but a new and separate agreement between the parties. "[T]he general rule is that the last agreement concerning the same subject matter that has been signed by all parties supersedes all former agreements, and the last contract is the one that embodies the true agreement." Magnolia Group v. Metropolitan Dev. & Housing Agency, 783 S.W.2d 563, 566 (Tenn. Ct. App. 1989).

The City argues the language of its 1994 resolution demonstrates it had no intention of entering into a new contract that altered more than the two terms, price and contract term, that were specifically mentioned in its resolution. However, "if the intention of one party was not communicated to the other party, then it is without binding effect." Simonton, 60 S.W.3d at 826 (citing Kozy v. Werle, 902 S.W.2d 404, 411 (Tenn. Ct. App. 1995)). The contract itself, which was executed by the City's mayor and referenced and incorporated in the City's resolution, does more than merely alter the contract price and term. When interpreting a contract, the court "'does not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written.'" Union Planters Nat'l Bank v. American Home Assurance Co., 865 S.W.2d 907, 912 (Tenn. Ct. App. 1993) (quoting Rainey v. Stansell, 836 S.W.2d 117, 119 (Tenn. Ct. App. 1992)). Accordingly, we conclude that the trial court did not err in ruling that the 1994 contract between the parties superceded the previous contracts and was the binding and enforceable agreement between the parties.

As its last issue, the City contends that the trial court abused its discretion by dissolving the temporary injunction and failing to issue a permanent injunction prohibiting West Valley from selling its assets to Tennessee American. The City asserts it clearly showed it will suffer immediate, irreparable, and permanent harm if it loses its water sales and notes that Tennessee American's representative was unwilling to commit his company to the purchase of all its water needs from the City for the remainder of the forty-year contract term.

"The standard of review respecting injunctive relief is whether the trial court erred in exercising its discretion in the issuance or nonissuance of the injunction." Medtronic, Inc. v. NuVasive, Inc., No. W2002-01642-COA-R3-CV, 2003 WL 21998480, at *10 (Tenn. Ct. App. Aug. 20, 2003) (citations omitted). We find no abuse of discretion by the trial court in dissolving the temporary injunction and refusing to issue a permanent injunction prohibiting West Valley from selling its assets to Tennessee American. Under the 1994 contract, there is neither a minimum purchase requirement for West Valley nor a requirement that it obtain the prior written consent of the City prior to selling its assets to another company. Thus, despite the City's potential for a budget shortfall should it lose the income generated from its water sales, there are no grounds to support the issuance of an injunction in this case.

Accordingly, the judgment of the chancery court is affirmed, and the costs of the appeal are assessed to the City of Whitwell and its surety, for which execution may issue if necessary.

_____
ALAN E. GLENN, SPECIAL JUDGE