IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 22, 2018 Session

**MARILYN (RESO) RAMSEY v. WARREN A. RESO, JR.**

**Appeal from the Chancery Court for Knox County**
**No. 190683-2          Clarence E. Pridemore, Jr., Chancellor**

_____

**No. E2017-01305-COA-R3-CV**

_____

This is a post-divorce case dealing with numerous issues of interpretation of the parties' marital dissolution agreement and permanent parenting plan. The plaintiff wife appealed one portion of the on-going case. We affirm the ruling of the trial court.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, C.J., joined.

Robert L. Jolley, Jr. and Megan A. Swain, Knoxville, Tennessee, for the appellant, Marilyn Ramsey.

Lisa C. Werner and Jordan D. Davis, Knoxville, Tennessee, for the appellee, Warren A. Reso, Jr.


**OPINION**

**I. BACKGROUND**

Marilyn (Reso) Ramsey ("Wife") hired attorney William E. Duffey, Jr., to file a complaint for divorce, marital dissolution agreement (hereinafter "MDA") and permanent parenting plan (hereinafter "PPP"). The requested documents were drafted and filed on November 25, 2015. While Wife had legal representation, Warren A. Reso, Jr. ("Husband") was pro se. He did not hire an attorney to review any of the documents at issue.[1]

_____

[1]Husband works as a registered nurse at the University of Tennessee Medical Center. Wife, a trained paralegal, has not worked since October 1996, when she had her first child.

During the divorce proceedings, Husband was paying all the couple's bills. He agreed to pay Wife $900 in child support even though he was living in the marital home with Wife and their minor children. Husband also agreed to pay $600 per month alimony to Wife despite the fact that he was paying all of her household expenses, including utilities, the mortgage, food and insurance. The trial court ordered the house to be put on the market in March 2016 at the time the couple divorced. The sale of the residence occurred on May 2, 2017, the delay attributable to the fact that the title company would not close without clarification of who was to receive the money from the sale. Wife's current attorney stated that Wife should receive all the proceeds. Husband claimed that he was entitled to half of the equity from the sale of the residence based on the following paragraph from the MDA:

> 4. Property Division
> A. Real Property
> The parties own, as tenants by the entirety, that certain real property located at 11021 Crosswind Drive, Knoxville, Tennessee 37934. Said Real Property shall be sold with the equity thereto being equally given to the Wife. The property shall be placed on the market in March 2016. The Wife shall be allowed to continue to live in the residence while same is being marketed; however, the Husband shall be totally responsible for the mortgage payments, taxes, insurance, and maintenance and up keep of said property while Wife is living in same. The Husband shall live in property until act of sale.

Ultimately, the trial court ordered that the disputed half of the distribution be held in the IOLTA trust account of Husband's counsel until further hearing could be conducted.

At a hearing on May 12, 2017, Husband testified that he was not represented by counsel at the time of the divorce and that Wife's prior attorney, Mr. Duffey, drafted the MDA. Husband further observed that he had been under the impression that Mr. Duffey was representing both of the parties. He acknowledged that the couple had discussed the MDA prior to Mr. Duffey drafting the document, but he asserted they agreed to divide the assets from the marital home equally between them. Husband declared that at no point did he anticipate Wife receiving more than 50 percent of the equity in the marital home. Husband noted his expectation that Wife would start working and support herself. However, he did agree to pay alimony to Wife. Wife, on the other hand, claimed that she understood "[t]he equity in the house was to be mine, 100 percent mine . . . ." Wife asserted that the agreement by Husband regarding the equity in the house was "in exchange" for Husband "receiv[ing] his entire retirement account from UT Medical Center."

According to Wife, even though she is neither physically nor mentally disabled, she is unable to work because she is a stay-at-home mom to a 15-year-old son. She explained that she had not anticipated having to support herself after the divorce and that she had not applied for any jobs in the area. She contended that Husband's bills would be the same and her not working would add no expense to Husband.

On May 30, 2017, the trial court ordered that "the equity from the sale of the marital home located at 11021 Crosswind Drive; Knoxville, Tennessee 37934 shall be divided 50/50 between the parties." To explain its reasoning, the court attached as an exhibit to the order the transcript from the hearing on the issue: "Taking that one clause in the context of the whole contract, this Court is left no choice but to determine that that clause meant to divide the assets or equity equally between the parties."

Wife timely filed this appeal on June 28, 2017.

## II. ISSUE

The sole issue on appeal is whether the trial court correctly interpreted the language in the following provision of the parties' MDA: "Said Real Property shall be sold with the equity thereto being equally given to the Wife."

## III. STANDARD OF REVIEW

The trial court's findings of fact are reviewed de novo with a presumption of correctness unless the evidence preponderates against the trial court's findings. Tenn. R. App. P. 13(d); *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006). The trial court's conclusions of law, however, are reviewed de novo with no presumption of correctness. *Id.*; *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Marital dissolution agreements are contracts and are to be treated as such. *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001); *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561-62 (Tenn. Ct. App. 2003). The interpretation of contracts is a matter of law. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006).

The dispute in this case surrounds the meaning of the modifier "equally" as it appears in Section 4A of the MDA.

When courts are construing and enforcing a contract, the first inquiry is into the intent of the parties entering into the contract. *Long v. McAllister-Long*, 221 S.W.3d 1, 9 (Tenn. Ct. App. 2006). The search for the intention of the parties begins with the language of the MDA itself. *Id.* Each provision must be considered in light of the entire agreement, and the language of each provision should be given its natural and ordinary meaning. *Elliott v. Elliott*, 149 S.W.3d 77, 84 (Tenn. Ct. App. 2004). Parties' intent may

be found in the plain language of the contract unless the language is ambiguous. *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 889-90 (Tenn. 2002). Therefore, the threshold question for courts construing contracts is whether the language of the contract is ambiguous. *Id.* at 890.

When entering into a MDA, the parties choose what language to include in order to illustrate how they intend for their property to be distributed. *Cookeville PC v. Southeastern Data Sys.*, 884 S.W.2d 458, 461-62 (Tenn. Ct. App. 1994). Accordingly, courts utilize the language of the MDA to determine each party's respective rights. *Id.* As we stated in *Cookeville PC v. Southeastern Data Systems*:

> The standard of interpretation of an agreement except where it produces an ambiguous result, or is excluded by a rule of law establishing a definite meaning, is the meaning that would be attached to the [agreement] by a reasonably intelligent person acquainted with all the operative usages and knowing all the circumstances prior to and contemporaneous with the making of the [agreement], other than oral statements by the parties of what they intended it to mean.

884 S.W.2d at 462. A contract's language "is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Farmers Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975). "Where the terms of the contract are ambiguous, the intention of the parties cannot be determined by a literal interpretation of the language, and the courts must resort to other rules of construction." *Planters Gin Co.*, 78 S.W.3d at 890. *Oman Constr. Co. v. Tennessee Valley Auth.*, 486 F. Supp. 375, 382 (M.D. Tenn. 1979).

**Meaning of Equally**

"Equally" is an adverb that derives from the word "equal." "Equally" is defined as: "1: in an equal or uniform manner[;] 2: to an equal degree[.]" Merriam Webster Dictionary, http://www.merriam-webster.com/dictionary/equally. Another definition for "equally" reads: "1: alike; 2: uniform; on the same plane or level with respect to efficiency, worth, value, amount, or rights."

On the basis of the above-cited definitions for "equally" and "equal," it is evident that a comparison between one or more things is inherent within each of these terms. These words are commonly used to denote distribution between one or more parties. Had the drafting parties intended for the equity in the house to be awarded solely to Wife they could have easily included that language, which was used in other places in the MDA ("The wife shall receive as her sole and separate property . . . ."). We find that there is no reason for the use of the word "equally" unless the word was being used to describe the

equal distribution of the equity in the home relative to the Husband. Equity cannot be divided equally to one person. As stated in *Poindexter v. Willis*, 256 N.E.2d 254 (Com. Pleas Ct. Ohio 1970) and quoted in <u>Black's Law Dictionary</u>, "equal implies not identity but duality" and the "use of one thing as the measure of another." *Id*. at 260.

In our view, the evidence does not preponderate against the trial court's interpretation of the phrase "equally to the Wife." We therefore affirm the holding of the trial court.

**Attorney's Fees**

Husband contends that Wife breached the MDA, as it relates to this appeal, because she refused to abide by the terms of the contract and to allow him his 50 percent of the equity from the sale of the marital home. According to Husband, Wife has denied him his share of the equity and has continued to embroil him in costly and unnecessary litigation. Husband therefore claims that he is entitled to recover his attorney's fees in this appeal. Section 24 of the MDA states:

> Should either party incur any expense or legal fees as a result of the breach of any portion of this MARITAL DISOLUTION AGREEMENT by the other party, then said breaching party shall be responsible for any and all attorney's fees and suit expenses incurred by the non-defaulting party.

Husband also raises the alternative ground that the appeal is frivolous. *Eberbach v. Eberbach*, 535 S.W.3d 467 (Tenn. 2017). Tennessee's frivolous appeal statute, Tennessee Code Annotated section 27-1-122, states:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest of the judgment, and expenses incurred by the appellee as a result of the appeal.

Under Tennessee Code Annotated section 27-1-122, if the court "determines that an appeal is frivolous, [it] may award attorney's fees" to the prevailing party. *Id*. The decision to award attorney's fees under the statute lies entirely within the court's discretion.

While we do not find the appeal to be frivolous pursuant to the relevant statute, Husband appears to be entitled to attorney's fees incurred on appeal pursuant to the MDA

provision's mandatory fee award provision. *See Eberbach*, 535 S.W.3d at 478. "[P]arties are contractually *entitled* to recover their reasonable attorney's fees when they have an agreement that provides the prevailing party in a litigation is entitled to such fees." *Id.*

## V. CONCLUSION

The judgment of the trial court is affirmed. Husband is awarded his attorney's fees incurred in this appeal. We remand the case to the trial court to determine the appropriate amount of Husband's reasonable attorney's fees on the appeal to this Court. Costs on appeal are assessed to the appellant, Marilyn Ramsey.

_____
JOHN W. MCCLARTY, JUDGE