FILED
01/24/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 4, 2018 Session

## BYRON L. JACKSON, JR. V. JAY HOWARD CRIPPEN ET AL.

**Appeal from the Chancery Court for Knox County**
**No. 190047-2     Clarence E. Pridemore, Jr., Chancellor**

_____

### No. E2018-00850-COA-R3-CV

_____

At an earlier time, Byron L. Jackson, Jr. (plaintiff) and defendant Jay Howard Crippen operated a company named Swiss Technologies, Inc. There were disagreements. The parties engaged in mediation. Following mediation, the parties, including Swiss, entered into a three year consulting agreement for Jackson pursuant to which he was to be paid $30,000 annually, "less the cost of health and related insurance." The contract provides that plaintiff "shall be entitled to health and related insurance . . . on the same term as other employees of [Swiss]." The parties stipulated that every other employee paid no more than one-half the cost of their health insurance, and employer paid the other half. Defendants Crippen and Swiss (collectively defendants) deducted the full amount of health insurance premiums from plaintiff's pay. Plaintiff brought this action for breach of contract. The trial court held that the contract was unambiguous, and that it required defendants to pay one-half of plaintiff's health care insurance costs. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J.,W.S., and THOMAS R. FRIERSON, II, J., joined.

Jon M. Cope, Knoxville, Tennessee, for the appellants, Jay Howard Crippen and Swiss Technologies, Inc.

James H. Price and Michael R. Franz, Knoxville, Tennessee, for the appellee, Byron L. Jackson, Jr.

**OPINION**

**I.**

As previously noted, Swiss is a company that plaintiff and defendant Crippen operated together for many years. They were opposing parties in a prior lawsuit that was characterized in the trial court as a "business divorce." They reached a mediated settlement agreement in the prior lawsuit. Among other things, Crippen agreed to buy plaintiff's interest in Swiss Technologies for a lump sum of $1,650,000. The parties also agreed to execute the employment agreement presently at issue. The agreement provides, in pertinent part, as follows:

> 1. <u>Term</u>. This Employment Agreement shall become effective on the date referenced above [Feb. 18, 2015], and shall terminate on January 31, 2018. This Employment Agreement may not be terminated for any reason prior to January 31, 2018.
>
> 2. <u>Employment</u>. Employer does hereby employ Employee as a freelance consultant, with no specific duties assigned except as may be required from time to time by Employer, and with no duty or right for Employee to be present on Employer's business premises.
>
> 3. <u>Compensation</u>. Employee shall be compensated at the annual rate of $30,000 per year, less the cost of health and related insurance for Employee and Employe[e]'s spouse. The net amount due Employee shall be paid by Employer to Employee consistent with Employer's normal payroll cycle. Employee shall be entitled to health and related insurance for the term of the Employment Agreement on the same terms as other employees of Employer.

(Numbering and underlining in original.)

Employer deducted the full amount of plaintiff's health insurance premiums from his salary. Plaintiff sued, alleging that defendants breached the contract by deducting the full amount rather than one-half the total cost, as was done for all other Swiss Technologies employees. Both sides moved for summary judgment, which the trial court denied. At the beginning of the bench trial, the parties agreed to stipulate to the material facts. Among the stipulated facts was the following:

With limited exceptions, Defendant Swiss Technologies, Inc. ("STI") has had a practice of paying one-half of each employee's health and related insurance premiums and deducting the other one-half of the premium amount from each employee's pay. STI has continued this practice to the date of these Stipulations of Fact for Trial.

Since the execution of the Employment Agreement, Defendants have deducted 100% of Plaintiff's health and related insurance premiums from his salary. Defendants have not paid any portion of Plaintiff's premiums. Since the execution of the Employment Agreement, Plaintiff is the only person employed by STI that has not had one-half or more of his applicable health and related insurance premiums paid by Defendants.

The total amount of health and related insurance premiums deducted from Plaintiff's pay over the entire three-year term of the Employment Agreement totals $40,455.00. Had Defendants deducted one-half of the total amount of health and related insurance premiums from Plaintiff's pay rather than the entire amount, Defendants would have deducted $20,227.50 less from Plaintiff's pay over the entire three-year term of the Employment Agreement.

(Numbering in original omitted.)

The trial court held that the terms of the contract were clear and unambiguous. It concluded "that the 'same terms' of health and related insurance as used in Paragraph 3 of the Employment Agreement includes the cost paid by other employees." Consequently, the trial court ruled that "STI was obligated under the contract to deduct only one-half of the Plaintiff's health and related insurance premiums from Plaintiff's compensation, as is consistent with STI's practice for all of its other employees." The court awarded plaintiff $20,227.50, plus attorney's fees and expenses as provided by the employment agreement. Defendants timely filed a notice of appeal.

## II.

Defendants raise the issue of whether the trial court erred in holding that the employment contract required defendants to pay plaintiff $30,000 per year plus one-half of plaintiff's health insurance premium.

## III.

There is no material fact in dispute. "Because the interpretation of a contract is a matter of law, our review is de novo on the record with no presumption of correctness in the trial court's conclusions of law." *Hassler v. Hassler*, No. E2017-02365-COA-R3-CV, 2018 WL 4697012, at *2 (Tenn. Ct. App., filed Oct. 1, 2018) (quoting *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006)).

## IV.

Our review of the trial court's interpretation of a contract is governed by these well-established principles:

> In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002) (citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). . . . The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. *Planters Gin Co.*, 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." *Id*. (quoting 17 Am. Jur. 2d, Contracts, § 245).

*Mitchell v. Mitchell*, No. E2017-00100-COA-R3-CV, 2019 WL 81594, at *4 (Tenn. Ct. App., filed Jan. 3, 2019) (quoting *Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693, 698 (Tenn. Ct. App. 2005)).

Regarding the potential ambiguity of a contractual term, we have observed the following:

> [i]n interpreting the contract, we must keep in mind several basic tenets of contract law. For instance, the language in dispute must be examined in the context of the entire agreement. *Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985). "All provisions of a contract should be construed as in harmony with each other, if such construction can be reasonably made, so as to avoid repugnancy between the several provisions of a single contract." *Rainey v. Stansell*, 836 S.W.2d 117, 119 (Tenn. Ct. App. 1992). Also, words must be given their usual and ordinary interpretation. *St. Paul Surplus Lines Ins. Co. v. Bishops Gate Ins. Co.*, 725 S.W.2d 948, 951 (Tenn.Ct.App.1986). "A strained construction may not be placed on the language used to find ambiguity where none exists." *Farmers–Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975).
>
> The language of a contract is ambiguous when its meaning is uncertain and when it can be fairly construed in more than one way. *Id*. "An ambiguity does not arise in a contract merely because the parties may differ as to interpretations of certain of its provisions." *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.*, 884 S.W.2d 458, 462 (Tenn. Ct. App. 1994). "Neither the parties nor the courts can create an ambiguity where none exists in a contract." *Id*.
>
> . . . The court will look to the material contained within the four corners of the contract to ascertain its meaning as an expression of the parties' intent. *Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975). Therefore, if a contractual clause, read in the proper context, unambiguously mandates a particular result, we will not disturb that result merely because it may be harsh for one party or the other.

*Wager v. Life Care Ctrs. of Am., Inc.*, No. E2006-01054-COA-R3-CV, 2007 WL 4224723, at *10, 11 (Tenn. Ct. App., filed Nov. 30, 2007).

In this case, both plaintiff and defendants argue that the contractual language is unambiguous, and that it supports their position. Each side likewise argues alternatively that if the contract is ambiguous, then extrinsic parol evidence would support their interpretation. We agree with the trial court's determination that the language of paragraph 3 of the employment agreement is clear, certain, and unambiguous. The parties agreed that defendants would provide plaintiff with "health and related insurance for the term of the Employment Agreement on the same terms as other employees of Employer." As plaintiff argues, common and ordinary usage of "the same terms" would include the price or cost of health insurance premiums. Plaintiff cites *Black's Law Dictionary* (6th ed. 1990) at 1472 as defining "terms" as "[c]onditions, obligations, rights, price, etc., as specified in a contract or instrument." Because there is no dispute as to the terms provided to the other employees, there is also no latent ambiguity in the language.

Defendants, relying on the familiar principle that "[c]ourts must avoid rewriting an agreement under the guise of interpreting it," *e.g., **CNX Gas Co. v. Miller Petroleum, Inc.***, No. E2009-00226-COA-R3-CV, 2011 WL 1849082, at *9 (Tenn. Ct. App., filed May 11, 2011), argue that the trial court "rewrote" the contract "by rearranging the sentence structure of paragraph 3." They point to the following statements made by the trial court at the end of the bench trial:

> It's this court's interpretation of what this means, if you were to read this paragraph 3 in a different order, if you were to take the last sentence and place it first within that paragraph – I'm not changing the wording of the paragraph, I'm just saying if you were to read the last sentence first – "Employee shall be entitled to health and related insurance for the term of the employment agreement on the same terms as other employees of employer." What this court takes that to mean is that Swiss Technologies would have to offer the same brand of insurance, or same insurance company, the same level of coverage, etc., to Mr. Jackson.
>
> And then if you were to apply the first sentence and make it the second sentence. "Employee shall be compensated at the annual rate of $30,000 per year, less the cost of health and related insurance for employee and employe[e]'s spouse." If you offer it to him at the same terms, the same insurance, they pay half the price of all their other employees, so therefore, I

would anticipate that they would pay half of the cost of the
insurance of Mr. Jackson.

These statements do not amount to a "rewriting" of the contract by the trial court.  The court's linguistic analysis is equally reasonable and valid regardless of sentence order.  Applying the usual, natural and ordinary meaning of the provisions at issue, the trial court correctly concluded that the parties agreed that defendants would provide one-half the cost of plaintiff's health insurance – the "same terms" as those provided to other employees.

## V.

The judgment of the trial court is affirmed.  Costs on appeal are assessed to the appellants, Jay Howard Crippen and Swiss Technologies, Inc.  The case is remanded for enforcement of the judgment and collection of costs assessed below.


_____
CHARLES D. SUSANO, JR., JUDGE