IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 17, 2005 Session

## JEANETTE JENKINS, ET AL. v. BILLY GENE ROBERTSON

**Appeal from the Chancery Court for Sevier County**
**No. 01-10-425     Telford E. Forgety, Chancellor**

**No. E2004-00899-COA-R3-CV - FILED MAY 9, 2005**

Billy Gene Robertson ("Defendant") listed property for lease with Jeanette Jenkins, the listing agent, and Eilene[1] McInturff, the broker, ("Plaintiffs") of Realty World-Barnes Real Estate.  Defendant signed a contract agreeing to pay a 10% commission to the broker.  Plaintiffs located a party who leased Defendant's property.  Defendant made some commission payments to Plaintiffs, but then stopped making payments claiming, in part, that the time period for making commission payments under the contract was unclear.  Ms. McInturff, as the broker, attempted to assign her rights under the contract to Ms. Jenkins and Ms. Jenkins sued Defendant for the commissions.  Defendant objected that Ms. Jenkins did not have standing because she was not the broker.  The Trial Court allowed joinder of Ms. McInturff, and the case proceeded to trial.  After trial, the Trial Court entered an order holding, *inter alia*, that Defendant owed Plaintiffs commissions over the life of the lease and also that Plaintiffs were entitled to a judgment against Defendant in the amount of $37,688.35, which included the award made on Plaintiffs' claim for commissions owed to the date of the judgment, an award of attorney's fees, and an award of discretionary costs. Defendant appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL and SHARON G. LEE, J.J., joined.

Cynthia Richardson Wyrick, Sevierville, Tennessee, for the Appellant, Billy Gene Robertson.

Scott D. Hall, Sevierville, Tennessee, for the Appellees, Jeanette Jenkins and Eilene McInturff.

---

[1]Ms. McInturff's first name is spelled as 'Eilene' on the pleadings in the record.  However, her name and signature appear on other documents in the record as 'Alliene.'  For purposes of continuity, we follow the spelling used on the pleadings.

# OPINION

## Background

Plaintiffs and Defendant signed a Sales Agency Contract ("the Contract") in March of 1995 allowing Plaintiffs to act as broker to lease property owned by Defendant and located in Sevier County, Tennessee. The parties did not have a form contract to use that was specific for a lease, and so they modified and used a sales form. In pertinent part, the Contract provides:

> I hereby employ and grant Realty World-Barnes Real Estate . . . the sole exclusive and irrevocable right to sell my property (legal description): FOR LEASE ONLY,….

> * * *

> The price is to be $160,000/year upon the following terms: ANNUAL INCREASES….

> * * *

> If said real estate is sold during the time of this contract or within 365 days after the expiration or termination thereof, … I agree to pay you a commission of 10% of the sale price at the time of closing from the proceeds of the sale….

> * * *

> Seller reserves the right to approve type of business on property.
> There will be an annual increase on lease amount of 3%.

> * * *

> ATTORNEY FEES AND COSTS: In connection with any litigation (including all appeals) involving the Seller, Buyer or any Escrow Agent, arising out of this contract, the prevailing party shall be entitled to recover all costs incurred, including reasonable attorney's fees.

Plaintiffs located someone to lease Defendant's property. Defendant and the lessees signed a document titled Deposit Receipt and Contract for Sale and Purchase ("the Deposit Receipt") on January 12, 1996. Again, the parties did not have a form contract specific to a lease, and so they used a modified sales form provided by Plaintiffs. In pertinent part, the Deposit Receipt provides:

> COMMISSION TO BROKER: Seller hereby recognizes Realty World-Barnes Real Estate (listing agency and Realty World-Barnes Real Estate (sub-agency as the broker(s) in this transaction, and agrees to pay as commission 10% % (sic) of the gross sales price.

In several places in the Deposit Receipt, the word 'purchase' was crossed-out and the word 'lease' was substituted so that these provisions each read 'lease price.'

Defendant made some commission payments to Plaintiffs, but then stopped making payments. Defendant claimed the time period for the commission payments was unclear under the Contract and claimed it was his understanding that he owed commission payments only for the first three years of the lease. Plaintiffs' attorney wrote several letters to Defendant requesting payment of "past due rental commission payments on the lease…." The record contains one such letter dated April 28, 1997, and two others dated in April and May of 2001.

Ms. McInturff, as the broker, attempted to assign her rights to the commissions at issue to Ms. Jenkins. Ms. Jenkins then sued Defendant for the commissions. Ms. Jenkins, however, was an associate broker and not the broker. Defendant raised the issue that Ms. Jenkins lacked standing to bring this suit as she was not the broker. By order entered April 1, 2003, the Trial Court held, *inter alia*, that Ms. McInturff as "the principal broker was a necessary part[y] and a real party in interest who should be joined in this action." This ruling by the Trial Court is not questioned on appeal by any party. The Trial Court permitted joinder of Ms. McInturff and continued the trial date "to allow the Defendant to respond to the joinder of the Principal Broker." On September 18, 2003, Plaintiffs filed a Notice of Joinder in which Ms. McInturff joined the action as a party plaintiff and adopted the Amended Complaint as her Complaint.

A bench trial was held in October of 2003. After trial, the Trial Court entered its order and memorandum opinion on February 19, 2004, holding, *inter alia*, that a commission of 10% was to be paid over the life of the lease. In its memorandum opinion, the Trial Court found that the parties anticipated a lease, not a sale, despite the fact that sales forms were used. The Trial Court noted that in the Contract, the parties modified the form document by adding the words 'FOR LEASE ONLY' in the legal description section, the words 'ANNUAL INCREASES' in the price section, and the provisions that 'Seller reserves the right to approve type of business on property' and 'There will be an annual increase on lease amount of 3%.' The Trial Court also noted that in several places in the Deposit Receipt, the parties struck out the words 'purchase price' and substituted the words 'lease price.' However, the Trial Court noted that the parties failed to modify all of the provisions in the Deposit Receipt stating:

> Down at the bottom of that document, … they did not strike out the word "sales" and substitute "lease," but the Court concludes that that is what the parties were talking about at the time. They had earlier in the same document stricken out the word "purchase price" and substituted the word "lease price." And while they apparently didn't catch it in the commission portion of that agreement, it's clear that the parties -- that the whole document was talking about a lease, that the parties never talked about a sale and never intended a sale, and so therefore, in the whole document, the Court must construe the word "sale price" to mean "lease price." It is clear to the Court that that's what the parties intended. It is clear to the Court that that's by both

documents really, by the listing document and by this deposit receipt and contract for sale and purchase ….

The parties do not dispute that only a lease and not a sale was contemplated.

In its memorandum opinion, the Trial Court held that the Contract is not ambiguous with regard to the time period for the payment of commissions and stated:

I wanted to hear such testimony as there was on the issue of whether or not there was a time limitation on the time that the commissions were to be paid. I have now heard that testimony, and to be quite honest with you, Counsel, I do not think, did not think at the time that the provision that given the contracts that we had, that the provision ten percent of the gross sales/lease price was all that ambiguous, nor do I now think that it is. I think when you say the price, the lease price is $30,000.00 a year and you say the commission is ten percent of the gross lease price, that that's ten percent of the gross Lease price over the Life of the Lease. I did not think it was all that ambiguous then. Nevertheless, I did want to hear what testimony there was to be presented on the fact and I now have heard it.

The Trial Court construed the Contract on its face and stated:

I have two written documents. I have the listing contract, which is ten percent of the sales price, and the term "sale price" has to mean lease price, because it's written in that document. Then you come down to the next one, another written document, two written documents, not just one, two written documents, and the second one very detailed.…I have two written documents, both of which call for ten percent commission on the lease price and with no limitation as to time, no limitation as to time.…I must conclude that the preponderance of the evidence is in favor of Ms. Jenkins and that the commission is payable over the life of the lease.

\* \* \*

And what [Defendant] essentially asks the Court to do here is to engraft upon a written document a term that just is not there, a term that just is not there, a three year limitation on a document that calls for a ten percent commission on the gross lease price. And the Court simply cannot engraft upon a document, add to a written document a term that is just not there.

In the February 19, 2004 order, the Trial Court reserved the issue of an award of attorney's fees.

On March 11, 2004, the Trial Court entered a judgment replacing the February 19, 2004 order. This judgment, *inter alia*, noted that commissions continued to accrue and awarded Plaintiffs a judgment against Defendant in the amount of $37,688.35, which included the award

-4-

made on Plaintiffs' claim for commissions owed to that date, an award of attorney's fees, and an award of discretionary costs.

Defendant appeals to this Court.

## Discussion

Although not stated exactly as such, Defendant raises four issues on appeal: 1) whether the Trial Court erred in allowing joinder of Eilene McInturff as a party plaintiff; 2) whether the Trial Court erred in holding that the commission was to be paid over the life of the lease; 3) whether the Trial Court erred in excluding the testimony of Steve Lane and limiting the testimony of Dottie Wood regarding industry standards; and, 4) whether the Trial Court erred in awarding attorney's fees to Plaintiffs. Plaintiffs request an award of attorney's fees on appeal.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first will consider whether the Trial Court erred in allowing joinder of Ms. McInturff as a party plaintiff. Tennessee Rule of Civil Procedure 17.01 provides, in pertinent part:

> Every action shall be prosecuted in the name of the real party in interest; . . . . No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification or commencement by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Tenn. R. Civ. P. 17.01.

In Tennessee, only a licensed real estate broker may bring an action to collect commissions. *Turnblazer v. Smith*, 379 S.W.2d 772, 775 (Tenn. 1964). An affiliate broker "merely works for and is under the control of the real estate broker . . . [and] does not perform services for others for which he may claim commission." *Id. See also* Tenn. Code Ann. § 62-13-102 (2) (1997).[2] (stating "'Affiliate broker' means any person engaged under contract by or on behalf of a licensed broker….") During the pertinent time period involved in this case, Ms. Jenkins was an affiliate broker. As noted earlier in this Opinion, no party contests on appeal the Trial Court's decision that Ms. McInturff's attempt to assign her rights does not prevent Ms. McInturff's being a necessary party

---

[2]The definition of 'affiliate broker' is now located at Tenn. Code Ann. § 62-13-102 (3) (2004).

and the real party in interest. That issue is not before us on appeal. However, suit originally was filed only in Ms. Jenkins' name, not Ms. McInturff's.

Defendant raised the issue that Ms. Jenkins lacked standing to bring this suit because she was an affiliate broker and, therefore, not the real party in interest. By order entered April 1, 2003, the Trial Court held, *inter alia*, that Ms. McInturff as "the principal broker was a necessary part[y] and a real party in interest who should be joined in this action." The Trial Court permitted joinder of Ms. McInturff and continued the trial date "to allow the Defendant to respond to the joinder of the Principal Broker." On September 18, 2003, Plaintiffs filed a Notice of Joinder in which Ms. McInturff joined the action as a party plaintiff and adopted the Amended Complaint as her Complaint.

Our Supreme Court has discussed the use of Rule 17.01 to add a proper party plaintiff stating:

> The liberality of this Court in allowing the addition or substitution of a proper party plaintiff for an improper plaintiff although the statute of limitations would have prevented the filing of a new suit is recognized by the Committee Comment to Rule 15.03, Tennessee Rules of Civil Procedure:
>
> > "15.03: Under prior law, an amendment which added a new party plaintiff or substituted a party plaintiff, related back to the institution of the original suit, and thus could be made even though an applicable statute of limitations would have barred a new suit by the new or substituted party [*Whitson v. Tennessee Cent. R. Co., 163 Tenn. 35, 40 S.W.2d 396 (1930); Mosier v. Lucas, 30 Tenn. App. 498, 207 S.W.2d 1021 (1947); Gogan v. Jones, 197 Tenn. 436, 273 S.W.2d 700 (1954)*]. But where the amendment sought relief against a new party defendant after the statute of limitations has barred a new suit, such defendant could successfully plead the bar [*Mellon v. Am. Flour & Grain Co., 9 Tenn. App. 383 (1929)*]."
>
> The cases in which this liberality has been most evident have been wrongful death actions in which a wrong party plaintiff has brought the suit. . . .
>
> * * *
>
> No doubt the reason for this liberal policy in wrongful death cases has been the fact that the cause of action is not changed by the substitution of the proper party plaintiff for the improper plaintiff, . . . such a substitution does not prejudice the defendant who has had notice, from the beginning of the suit, of the nature of the cause of action and that it was being pressed against him.

*Chapman v. King*, 572 S.W.2d 925, 927-28 (Tenn. 1978) (footnote omitted).

In our view, the case at hand was a proper one for the Trial Court to allow joinder of a proper party plaintiff. Plaintiff made an oral motion requesting joinder of Ms. McInturff within a reasonable time after Defendant made his objection. In addition, we note that Defendant was not prejudiced by the joinder of Ms. McInturff because he "had notice, from the beginning of the suit, of the nature of the cause of action and that it was being pressed against him" and because the Trial Court allowed continuance of the trial of this matter. *Id.* We, therefore, hold that the Trial Court correctly allowed the joinder of Ms. McInturff.

We now turn to the question of whether the Trial Court erred in holding that the commission was to be paid over the life of the lease. This issue involves the interpretation of the Contract. In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002)(citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." *Planters Gin Co.*, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. *Planters Gin Co.*, 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." *Id.* (quoting 17 Am. Jur. 2d, *Contracts*, § 245).

This Court's initial task in construing the Contract at issue is to determine whether the language of the contract is ambiguous. *Planters Gin Co.*, 78 S.W.3d at 890. If the language is clear and unambiguous, the literal meaning of the language controls the outcome of the dispute. *Id.* A contract is ambiguous only when its meaning is uncertain and may *fairly* be understood in more than one way. *Id.* (emphasis added). If the contract is found to be ambiguous, we then apply established rules of construction to determine the intent of the parties. *Id.* Only if ambiguity remains after applying the pertinent rules of construction does the legal meaning of the contract become a question of fact. *Id.*

We hold that the evidence does not preponderate against the Trial Court's findings of fact, and, we further agree with the Trial Court's resulting conclusions of law concerning the intention of the parties. Specifically, the Trial Court held that the parties contemplated a lease, never a sale, and that 'sale price' means 'lease price.' As such, the phrase "a commission of 10% of the sale price" in the Contract means 10% of the money that comes in, or the lease payments. The Trial Court also held that the Contract does not provide any limitation as to time for the commission payments. The Trial Court held, although it did allow testimony on the commission issue, that it

originally "did not think … that the [commission] provision... was all that ambiguous, nor do I now think that it is."

We agree with the Trial Court that taking the Contract as a whole, the commission provision is not ambiguous. The time period for commission payments under the Contract may *not* fairly be understood in more than one way. To hold that the time period terminated prior to the expiration of the lease would require, as the Trial Court stated, engrafting on the Contract a new term that just is not there. Making such a contract revision is not the role of this Court. We, therefore, hold that the Contract is not ambiguous and by its clear terms provides that the commission was to be paid over the life of the lease as defined by the Contract. We affirm on this issue.

However, we still must consider whether the Trial Court erred in excluding the testimony of Steve Lane and limiting the testimony of Dottie Wood regarding industry standards. Because the Trial Court held correctly that the Contract was unambiguous and interpreted it on its face, the testimony of Mr. Lane and Ms. Wood regarding any industry standards was not relevant. Further, we note that Mr. Lane testified that the standard in the industry required that contracts be specific regarding commissions and opined that the commission on the lease at issue would be for only one year. Defendant, however, admitted that it was his understanding that he had agreed to pay commissions for three years. Thus, Mr. Lane's testimony on industry standards is in direct conflict with the contracting parties' intent even as expressed by Defendant, and is irrelevant to the issues at hand as parties to a contract are free to agree to deviate from what might be considered to be the "industry standards." Ms. Wood was able to add nothing further except her opinion that if she were receiving commissions on a lease, she would be required to service the lease. We hold that Defendant's issue regarding the testimony of Mr. Lane and Ms. Wood is without merit.

Finally, we consider whether the Trial Court erred in awarding attorney's fees to Plaintiffs. The Trial Court awarded Plaintiffs attorney's fees under the Contract. In pertinent part, the Contract provides:

> In connection with any litigation (including all appeals) involving the Seller, Buyer or any Escrow Agent, arising out of this contract, the prevailing party shall be entitled to recover all costs incurred, including reasonable attorney's fees.

Defendant argues, in part, that the Trial Court erred in awarding Plaintiffs attorney's fees because Plaintiffs did not submit an itemization of fees to allow the Trial Court to determine the reasonableness of the fees. In addition, Defendant argues that attorney's fees should be limited to the time expended after Ms. McInturff, the real party in interest, was joined in the suit because fees cannot be recovered in connection with a claim that failed and since Ms. Jenkins was not the proper party, any fees incurred prior to joinder of Ms. McInturff "were incurred in pursuit of a claim that failed."

To begin, we note that Plaintiffs submitted the affidavit of Plaintiffs' attorney which set out, in part, the hourly rate and the number of hours expended on this case. The Trial Court

found these fees and the expenses documented in this affidavit to be reasonable. The evidence does not preponderate against this finding.

Further, we note that the work done in this matter prior to the joinder of Ms. McInturff as the real party in interest was done for Ms. McInturff's benefit. Rule 17.01 of the Tennessee Rules of Civil Procedure answers this question when it states that "such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." As such, we cannot, and do not, find that the fees incurred prior to the joinder of Ms. McInturff were incurred in pursuit of a claim that failed. We, therefore, affirm the award of attorney's fees to Plaintiffs.

Plaintiffs have requested an award of their attorney's fees on appeal under the Contract. It is without serious dispute that the Contract provides for the prevailing party to recover attorney's fees for "all appeals...." Plaintiffs are the prevailing party in this litigation, including this appeal. We award Plaintiffs their attorney's fees incurred in connection with this appeal.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for the determination of the amount to be awarded to Plaintiffs for their attorney's fees incurred in connection with this appeal, and for collection of the costs below. The costs on appeal are assessed against the Appellant, Billy Gene Robertson, and his surety.

_____
D. MICHAEL SWINEY, JUDGE