IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 1, 2021

## DEBORAH P. LINN v. MARK A. LINN

**Appeal from the Chancery Court for Sumner County**
**No. 2008D-236      Louis W. Oliver, III, Chancellor**

_____

**No. M2020-01624-COA-R3-CV**

_____

At issue in this appeal is the trial court's characterization of the alimony obligation in the parties' divorce decree. The trial court determined that the alimony is part alimony *in solido* and part alimony *in futuro*. Based in part on this conclusion, the court denied Husband's petition to modify his alimony obligation. The trial court also entered judgment against Husband for alimony arrearages, life insurance premiums, and Wife's discretionary costs and attorney's fees. Additionally, the court found Husband in contempt for failing to pay alimony and life insurance premiums. Because we conclude the trial court mischaracterized the alimony at issue, we affirm in part, reverse in part, and vacate in part its judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed
in Part; Reversed in Part; and Vacated in Part.**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which THOMAS R. FRIERSON, II and W. NEAL MCBRAYER, JJ., joined.

Russell E. Edwards, Hendersonville, Tennessee, for the appellant, Mark A. Linn.

Mary Arline Evans and Charles R. Niewold, Nashville, Tennessee, for the appellee, Deborah P. Linn.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

Appellant Mark A. Linn ("Husband") and Appellee Deborah P. Linn ("Wife") were divorced by a final decree filed on January 5, 2012 in the Sumner County Chancery Court ("the trial court"). They had been married for over twenty years and had no minor children

by the time of the divorce. When they divorced, Wife was fifty-four years old, and Husband was fifty years old. The divorce decree incorporated the parties agreed-upon marital dissolution agreement ("MDA"), relevant portions of which read as follows:

> **7. LIFE INSURANCE.**
> [] Husband agrees that he shall keep in effect that life insurance which he presently has in the sum of $250,000.00 with Wife as sole and irrevocable beneficiary, so long as [] Husband is under an obligation to pay alimony. [] Husband agrees to provide to [] Wife proof of said coverage by January 1st of each year.
>
> *      *      *
>
> **9. ALIMONY.**
> [] Husband agrees to pay to [] Wife as alimony *in futuro* the sum of Two Thousand Five Hundred ($2,500.00) Dollars per month, for (120) consecutive months and thereafter, he shall pay the sum of One Thousand Five Hundred ($1,500.00) Dollars per month, until [] Wife dies or remarries, or until [] Husband dies. Said alimony shall be payable on the fifteenth (15th) day of each month, with the first payment to begin January 1, 2012.
>
> *      *      *
>
> **18. ENFORCEMENT.**
> It is agreed by and between the parties that in the event it becomes reasonably necessary for either party to institute legal proceedings to procure the enforcement of any provision of this Agreement, and if successful, he or she shall also be entitled to a judgment for reasonable expenses including attorney fees incurred in prosecuting the action.

(Italics added).

Subsequently, Husband paid Wife alimony in the amount of $1,150.00 every two weeks, rather than $2,500.00 per month as per the divorce decree. Without Wife's consent, Husband reduced his alimony payments to $2,300.00 per month beginning in February 2017, and then to $1,500.00 per month beginning in August 2017. In 2017, Husband paid a total of $23,800.00 in alimony. He further reduced his alimony payments in 2018 to $12,100.00 for the year. In 2019, Husband paid $10,000.00 in alimony. He paid $2,835.00 in alimony between January and April of 2020, and stopped paying alimony after April 2020. The parties stipulate that Husband owed Wife $61,515.00[1] in alimony arrearages as

---

[1] The trial court calculated this number to be $61,265.00. It is unclear how the parties and the trial court arrived at these different figures. Further, in its final order the trial court at one point states that

of August 26, 2020.

Husband filed a petition in the trial court to modify his alimony on June 18, 2018. Therein, he alleged, *inter alia*, that he had been paying what he could in alimony, but was behind in payments according to the MDA and final divorce decree; he no longer had the ability to pay the amount of alimony set forth in the MDA; Wife no longer needed the amount of alimony that was established in the MDA; alimony should end when Wife becomes eligible to draw social security benefits in February 2020; and one of the parties' children, a twenty-eight year-old daughter, was living with Wife, therefore creating a presumption that Wife no longer needed the amount of alimony previously awarded, pursuant to Tennessee Code Annotated section 36-5-121(f)(2)(B).[2] Husband asked for his alimony obligation to be terminated or substantially decreased, pursuant to Tennessee Code Annotated section 36-5-121(f)(2)(A),[3] in light of the substantial and material change in circumstances since the divorce, and asserted that alimony should be modified unless Wife could overcome the statutory presumption in section 36-5-121(f)(2)(B).

In her answer, Wife raised, *inter alia*, the following affirmative defenses: Husband had substantial assets from which he could have been making full alimony payments; and he was believed to be supporting a live-in girlfriend, choosing to spend his money on her instead of his alimony obligation. Wife also filed a counter-petition on November 5, 2018, wherein she alleged, *inter alia*, that Husband had the ability to comply with the divorce decree and had sufficient assets from which to pay as ordered, but willfully failed to comply. She asked the court to find Husband in civil contempt and sought reimbursement for fees associated with the qualified domestic relations order that was prepared to divide Husband's 401k plan,[4] premium payments on his life insurance plan, and alimony

Husband stipulated that he owed $61,575.00 in alimony arrearages, but this appears to be a typographical error.

[2] Section 36-5-121(f)(2)(B) states:

In all cases where a person is receiving alimony in futuro and the alimony recipient lives with a third person, a rebuttable presumption is raised that:

(i) The third person is contributing to the support of the alimony recipient and the alimony recipient does not need the amount of support previously awarded, and the court should suspend all or part of the alimony obligation of the former spouse; or

(ii) The third person is receiving support from the alimony recipient and the alimony recipient does not need the amount of alimony previously awarded and the court should suspend all or part of the alimony obligation of the former spouse.

[3] Section 36-5-121(f)(2)(A) states:

An award of alimony in futuro shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances.

[4] Wife since abandoned this claim in the trial court, so it is not at issue on appeal.

arrearages. She also sought attorney's fees for having to enforce the divorce decree. Husband filed an answer that included various affirmative defenses.

There was a hearing in the trial court[5] on August 26 and 27, 2020 on Husband's petition and Wife's counter-petition. Husband's employment income was $198,000.00 when the parties divorced, until July 2015, when it increased to $258,000.00. Beginning in approximately 2018, his income decreased to around $70,000.00 annually. He also received two government loans in 2020. Husband owns no real property, but has a 401k retirement account, which, as of November 2020, was valued at approximately $477,121.00, but could not be accessed without penalty until June 14, 2021. Husband's assets include an unencumbered thirty-foot boat; a few thousand dollars in his checking and savings accounts; and a Hyundai, which is financed as a leased vehicle. His monthly personal expenses are approximately $6,000.00. He lives with his fiancé, who earns $1,200.00 per month and gives Husband approximately $600.00 per month or contributes food and cleaning supplies.

Wife owns a spa, which she started in 2006, and the building that houses the spa. The mortgage on the building is approximately $2,000.00 per month. Wife loaned the spa $171,000.00, and between 2012 and July 31, 2020, the spa mostly operated at a loss. Wife's income fluctuated between 2012 and 2019, ranging from $20,639.00 to $65,869.00. She has also received two government loans, along with unemployment income of $13,217.00 in 2020. Wife claims that she has withdrawn a significant amount from the retirement account she received in the divorce, sometimes incurring penalties, partially in order to pay for her daughter's college, per the parties' oral agreement. The retirement account is worth approximately $82,000.00. Her monthly personal expenses are approximately $3,226.56. She owns at least one vehicle, has no car note, and owns the home she lives in. Her adult daughter lives with her, pays her $400.00 per month, and pays for Wife's cell phone bill.

At the close of proof, the trial court sua sponte asked the parties to address the issue of whether the 120-month alimony obligation in the MDA was, in fact, modifiable, in their proposed findings of fact and conclusions of law. In other words, the trial court wanted to know if the 120-month obligation was alimony *in futuro* or alimony *in solido*, and whether that depended upon how it was designated in the MDA (as "*in futuro*"), or how it was scheduled to be paid (as a specific amount for a specific time period).

The trial court filed a final order on November 6, 2020. With respect to the alimony obligation, the trial court found that "[a]lthough Paragraph 9 of the [MDA] labels the first 120 months alimony as alimony *in futuro*, the Court finds it is not alimony *in futuro*, but alimony *in solido*." The trial court reasoned that alimony *in solido* is an award of a definite sum, and "the first part of the alimony paragraph . . . is $2,500.00 per month for a definite period of time of 120 months and for an ascertainable amount $2,500.00 x 120 months =

---

[5] A different trial court judge presided over this trial than the original divorce trial.

- 4 -

$300,000.00." Therefore, according to the trial court, "the first part of the alimony paragraph in the parties' [MDA] is clearly alimony *in solido*." The trial court noted that alimony *in solido* is not modifiable except by the parties' agreement, and concluded that "[t]he parties clearly did not agree to a modification of the alimony *in solido*." Further, the trial court explained as follows:

> The Court considered the specific wording of the alimony provision in paragraph 9 of the MDA. After the definite description of "2,500.00 per month, for 120 consecutive months" the provision states "<u>and thereafter</u>, he shall pay $1,500.00 per month until Wife dies or marries, or until Husband dies[.]" (emphasis added) The second portion of the alimony provision contains terminable provisions, and is therefore alimony *in futuro*, and not alimony *in solido*. However, the first portion prior to the phrase "<u>and thereafter</u>" contains no terminable or review provision. The alimony provision (paragraph 9) of the MDA clearly included two separate and distinct alimony provisions. []Husband's Petition to Modify the portion of alimony requiring him to pay $2,500.00 per month for 120 consecutive months, is denied in that it is not modifiable alimony *in solido* of $300,000.00[.]

(Internal citation omitted).

As to the portion of alimony that the trial court found was alimony *in futuro*—beginning in January 2022, in the amount of $1,500.00 per month until Wife dies or remarries, or Husband dies—the trial court found as follows:

> The trial of this matter was in August 2020, a year and four (4) months before the start of the alimony *in futuro*. Both parties are self-employed. Both parties suffered financial losses to their businesses in 2020 due to COVID-19. It is now unknown how long the financial repercussions of COVID-19 will last. []Husband has requested the Court to modify or terminate his alimony *in futuro* obligation that begins in January 2022. There is no way for the Court at this time, based on August 2020 testimony and proof, to determine what will be the needs of []Wife and the ability of []Husband to pay in January 2022. . . .
>
> []Husband's Petition, as to modification of alimony *in futuro* set to begin in 2022, is premature, and is respectfully denied by the Court at this time.

The court went on to state that because it "ha[d] found the alimony not modifiable at this time for the reasons stated herein," it "w[ould] not consider at this time the modification of either the alimony *in solido* or the alimony *in futuro*."

- 5 -

The trial court also concluded that the issues surrounding the cohabitation of Wife with the parties' adult daughter and Husband with his fiancé were moot, given that it had already found that part of the alimony was not modifiable and the other part was not ripe for modification or termination. On the issue of contempt, the trial court found that the final divorce decree was lawful; the divorce decree was clear, specific, and unambiguous regarding alimony; and, "[c]onsidering the income and assets available to []Husband, the financial choices he [] made, and the months when he did not pay alimony in full as ordered, . . . the failure to pay [wa]s willful." The trial court also found that Husband chose not to pay the life insurance premiums,[6] despite being able to. Thus, the trial court held Husband in civil contempt of court.

Finally, the trial court found that Wife was entitled to reasonable attorney's fees in accordance with Tennessee Code Annotated section 36-5-103(c),[7] and also pursuant to the Enforcement clause of the MDA. The trial court explained:

> []Wife's Counter Petition seeking relief from []Husband due to his failure to pay alimony and life insurance premiums, and to hold []Husband in civil contempt is granted in part. The attorney for []Wife has requested attorney fees and expenses in the amount of $53,587.00. The Court has carefully examined the affidavits submitted by the attorney for []Wife, and finds that the attorney expended 98.4 hours of time representing []Wife with a reasonable hourly rate of $300.00 per hour. The Court awards []Wife a judgment for her reasonable attorney fees in the amount of $29,520.00.

> The Court did not award fees for legal assistants and support staff. The Court will consider court reporter fees upon the filing of a motion for discretionary costs.

The trial court therefore dismissed Husband's petition for modification and ordered

---

[6] In his brief, Husband states that "he does not dispute on appeal the judgment entered against him in the amount of $4,991.00 for life insurance premiums owed to []Wife." Therefore, we will not address this issue, and we leave the portion of the trial court's order dealing with it undisturbed. *See* further discussion, *infra*. Wife also apparently requested ownership of the life insurance policy in the trial court. The trial court denied that request, and Wife does not raise the denial on appeal, so that portion of the trial court's order will also remain unchanged by this Opinion.

[7] Section 36-5-103(c) states:

 A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the nonprevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

him to immediately pay, within ten days of the entry of the court's order, "alimony in the amount of $2,500.00 per month and reimbursement of life insurance premiums for September and October, 2020 to []Wife." The court also ordered Husband to keep all future payments timely. Wife was granted a judgment "in the amount of $96,026.00 (alimony arrearage $61,515.00; life insurance premium $4,991.00; and reasonable attorney fees $29,520.00) plus accrued statutory interest at the rate of 5.25% to be paid in full on or before August 31, 2021."[8]

> The court's order went on to state:
> Should []Husband fail to pay the judgment plus statutory interest to []Wife on or before August 31, 2021, then, in that event []Husband shall be incarcerated in the Sumner County Jail until the amount is paid in full. Should []Husband fail to pay the prospective payments on alimony *in solido* and insurance premiums beginning September, 2020 and keep same current, as Ordered hereinabove, []Wife is directed to file a petition and show cause order with this Court, seeking immediate relief due to []Husband's non-payment and contempt.

> []Wife [] is awarded a lien against []Husband's boat and his Collier-Wealth 401(k) account in the amount of the judgment, until satisfied.

Wife subsequently filed a motion for discretionary costs in the trial court pursuant to Rule 54.04(2) of the Tennessee Rules of Civil Procedure,[9] arguing that she was entitled to judgment for her reasonable and necessary court reporter costs, as the prevailing party.

---

[8] According to Husband's brief, following the entry of the final judgment,

> the [t]rial [c]ourt stayed payment of this judgment by partially granting []Husband's motion to stay proceedings pending appeal by impressing a $200,000.00 lien on []Husband's 401(k)/IRA account and his boat in favor of []Wife to secure payment of the judgment, interest that accrues on the same, court costs, discretionary costs, and any other judgments/costs that may be assessed to []Husband.

The trial court's decision to grant a stay is largely immaterial to this appeal.

[9] Rule 54.04(2) states, in part:

> Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion. Discretionary costs allowable are: reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions (or stipulated reports) and for trials, reasonable and necessary interpreter fees not paid pursuant to Tennessee Supreme Court Rule 42, and guardian ad litem fees; travel expenses are not allowable discretionary costs. Subject to Rule 41.04, a party requesting discretionary costs shall file and serve a motion within thirty (30) days after entry of judgment. The trial court retains jurisdiction over a motion for discretionary costs even though a party has filed a notice of appeal. The court may tax discretionary costs at the time of voluntary dismissal. . . .

- 7 -

After a hearing via Zoom on December 7, 2020, the trial court found that it was appropriate to award Wife, as the prevailing party, her court reporter fees in the amount of $1,861.75. Execution of the judgment was stayed pending resolution of this appeal, and the issue of interest on that judgment was reserved, pending the stay being lifted.

Husband appealed.[10]

## II. ISSUES PRESENTED

Each of the parties raises the following issues, which we have slightly restated:

1. Whether the initial 120-month period of Husband's alimony obligation is alimony *in solido* and thus not modifiable; and, consequently, whether the trial court erred in finding that it is *in solido*.
2. Whether the trial court erred in dismissing Husband's petition to modify the spousal support obligation.
3. Whether the trial court erred in finding Husband in contempt.
4. Whether the trial court erred in awarding Wife discretionary costs.

Husband raises the following additional issue, which we have slightly restated:

1. Whether the trial court erred by sua sponte raising a legal defense/argument on behalf of Wife and dismissing Husband's petition on that ground.

Wife raises as additional issues whether the trial court erred in awarding her attorney's fees and whether she should be awarded appellate attorney's fees.

## IV. DISCUSSION

### A.

We begin by addressing the first issue: whether the alimony in the MDA is alimony *in solido* or alimony *in futuro*. "The determining factor in distinguishing whether alimony

---

[10] There was some disagreement between the parties at the trial level regarding the transcript and statement of the evidence. In short, Wife filed a statement of the evidence, to which Husband objected. Husband ultimately filed the trial transcript and a request that Wife's statement of the evidence therefore not be included in the record. However, it appears that the trial court never officially ruled on whether Wife's statement of the evidence would be included in the record, and it ended up being included. While the trial court should have resolved the issue, *see* Tenn. R. App. P. 24(e) ("Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court . . . ."), we will proceed to consider only the transcript, and not Wife's statement of the evidence, given that the transcript is the most "fair, accurate and complete account of what transpired in the trial court," Tenn. R. App. P. 24(g).

is *in futuro* or *in solido* is the definiteness or indefiniteness of the amount ordered to be paid." ***Averitte v. Averitte***, No. M2012-00738-COA-R3-CV, 2013 WL 357602, at *3 (Tenn. Ct. App. Jan. 29, 2013) (citation omitted). "Thus, to determine the type of alimony created, courts must look at the award of alimony at the time the award is made and determine if the sum of the alimony to be paid was definite and ascertainable at that time." ***Id.*** (quoting ***In re Estate of Steil***, No. M2011-00701-COA-R3-CV, 2012 WL 1794979, at *4 (Tenn. Ct. App. May 16, 2012)). Alimony *in futuro* "is intended to provide support on a long-term basis until the death or remarriage of the recipient." ***Gonsewski v. Gonsewski***, 350 S.W.3d 99, 107 (Tenn. 2011) (citing Tenn. Code Ann. § 36-5-121(f)(1)). Alimony *in futuro* is modifiable by the court "upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A). Alimony *in solido* is also a form of long-term support, but consists of a definite amount of money payable either as a lump sum or in installments over a definite period of time. Tenn. Code Ann. § 36-5-121(h)(1); ***Gonsewski***, 350 S.W.3d at 108. Alimony *in solido* is not modifiable, except by the parties' agreement, and does not terminate upon either party's remarriage or death. Tenn. Code Ann. §§ 36-5-121(h)(2), (3); ***Gonsewski***, 350 S.W.3d at 108.

"[T]he type of alimony involved [is] determined from the language of the order or agreement establishing the award." ***Finn v. Bundyl***, No. 96D–216, 2005 WL 418793, at *4 (Tenn. Ct. App. Feb. 22, 2005). "A marital dissolution agreement is a contract and thus is generally subject to the rules governing construction of contracts. Because the interpretation of a contract is a matter of law, our review is de novo on the record with no presumption of correctness in the trial court's conclusions of law.'" ***Barnes v. Barnes***, 193 S.W.3d 495, 498 (Tenn. 2006) (citations and quotation marks omitted). "In 'resolving disputes concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language.'" ***Planters Gin Co. v. Fed. Compress & Warehouse Co.***, 78 S.W.3d 885, 889–90 (Tenn. 2002) (quoting ***Guiliano v. Cleo, Inc.***, 995 S.W.2d 88, 95 (Tenn. 1999)). "The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." ***Id.*** at 890 (citation omitted). "The intent of the parties is presumed to be that specifically expressed in the body of the contract. . . . If clear and unambiguous, the literal meaning of the language controls the outcome of contract disputes." ***Id.***

Wife essentially contends that it does not matter how the alimony is characterized for purposes of Husband's obligation to pay. Nevertheless, she argues that the trial court was correct and the alimony provision in the MDA "is clearly divided into two [] separate and distinct phases"—with the first being alimony *in solido* (a sum certain over a period of 120 months, with no contingencies), and the second, alimony *in futuro* (an indefinite award subject to contingencies). According to Wife, "[t]he second phase is marked by the phrase 'and thereafter,' (with a comma) indicating a break from phase one and subsequent change in the nature of the award," and

[a]t the time of the award, the amount of alimony in that second phase was not for a definite period of time, nor was it for an ascertainable amount. It would be hard to fashion two more different forms of alimony, as the former is definite and ascertainable, and the latter is indefinite and unascertainable.

Even though the MDA states that the alimony is "*in futuro*," Wife avers that we should not prioritize form over substance by "interpret[ing] the entire alimony obligation as *in futuro*." She also argues, *inter alia*, that "[t]here are no facts in the record to support a conclusion about the intent of either party."

Husband argues that the MDA explicitly states that the alimony is *in futuro*, and "[t]he parties simply desired to fashion an alimony *in futuro* award that had an initial amount for 10 years, then a reduced amount for the remainder of the award." He submits that "[t]o uphold the [t]rial [c]ourt's decision in this case would mean that parties could not agree and courts could not order that alimony *in futuro* awards can change in value over a period of time." Husband cites **Kelly v. Kelly**, No. M2008-02170-COA-R3-CV, 2009 WL 1312839 (Tenn. Ct. App. May 11, 2009), in support of this position.

In that case, the issue was also whether the alimony in the MDA was alimony *in futuro* or *in solido*. 2009 WL 1312839, at *1. The language of the MDA in **Kelly** was as follows: "The Husband will pay alimony in the amount of $400.00 per month due on the 15th of each and every month for a period of five (5) consecutive years. Payments are to be made by direct bank deposit. This will be reviewed at the end of the period." *Id.* Similar to the argument Wife makes in this case, the wife in **Kelly** argued that the MDA created "a kind of hybrid alimony: an award of alimony *in solido* for five years with a reservation of the issue of alimony *in futuro* for determination at the end of that period." *Id.* at *2. This Court rejected that argument, concluding that

the alimony award at issue is for alimony *in futuro* because the total amount awarded was not ascertainable at the time of the award. The first sentence of the alimony award suggests a classification as alimony *in solido* since the award calls for payments of $400 per month for five years. The final sentence of the paragraph, however, makes the total amount of the award indefinite because the award is to be reviewed at the end of five years. Thus, it is possible that Husband would be required to continue making monthly payments for some period of time after the end of the five years. Because the total amount of the award was unascertainable at the time of the award, we must classify the award as being alimony *in futuro*.

*Id.*

Husband contends that the trial court impermissibly rewrote the parties' MDA, and that the contingencies—Wife's remarriage or either party's death—are applicable not only

to the portion of the award due after the first 120 months, but also to the initial 120-month period. He also argues, *inter alia*, that the reason Wife likely never raised the issue of whether the alimony is *in solido* or *in futuro*, until the trial court raised it sua sponte, is because the alimony provision has always been understood to provide for alimony *in futuro*.

We agree with Husband's position that the alimony at issue is alimony *in futuro*. First, the MDA explicitly states that the alimony is "alimony *in futuro*." While this express designation may not be dispositive, it is certainly persuasive evidence of the parties' intent that this award be treated as alimony *in futuro*. *Compare Averitte*, 2013 WL 357602, at *4 (holding that the label on the award as "periodic alimony" was not "conclusive"), *with Schmidt v. Schmidt*, No. M2004-01350-COA-R3-CV, 2005 WL 2240960, at *6 (Tenn. Ct. App. Sept. 15, 2005) (citing *Waddey v. Waddey*, 6 S.W.3d 230 (Tenn. 1999); *Self v. Self*, 861 S.W.2d 360 (Tenn. 1993); *Grissom v. Grissom*, 15 S.W.3d 474 (Tenn. Ct. App. 1999)) (noting that in the cited cases, "the ultimate decision of the appellate court was consistent with the description of the alimony in the divorce decree as either *in futuro* or *in solido*"). Moreover, if the parties intended to create two categories of alimony, we are left to wonder why they would only label one of them. *See, e.g.*, *S.M.R. Enterprises, Inc. v. S. Haircutters, Inc.*, 662 S.W.2d 944, 949 (Tenn. Ct. App. 1983) (citation omitted) ("The maxim *expressio unius est exclusio alterius* is here applicable. Its meaning is that the expression of one implies the exclusion of the others. Stated differently, where a contract by its express terms includes one or more things of a class it simultaneously implies the exclusion of the balance of that class."). Here, Wife does not dispute that this label is properly applied to the second portion of the alimony award; only that it should not apply to the initial 120-month award. But the designation of the alimony as *in futuro* is stated at the outset of the provision in the MDA, indicating that it modifies both the 120-month award and the award "thereafter."

The alimony award also does not appear to be consistent with an award of alimony *in solido*. "'A typical purpose of such an award would be to adjust the distribution of the parties' marital property.'" *Gonsewski*, 350 S.W.3d at 108 (quoting *Burlew v. Burlew*, 40 S.W.3d 465, 471 (Tenn. 2001)). Alimony *in solido* may also be used to award attorney's fees to one spouse. *Id.* (citing Tenn. Code Ann. § 36-5-121(d)(5)). Here, nothing in the MDA indicates that the alimony award was intended to adjust the distribution of marital property. Moreover, the MDA expressly provides that each party was to pay his or her respective attorney's fees. Thus, nothing in the MDA indicates that any portion of the alimony award was intended to meet the typical purposes of an award of alimony *in solido*. Rather, there is evidence in the record that at the time of divorce, Wife was economically disadvantaged compared to Husband. Alimony *in futuro* is precisely designed to remedy such a situation. *See Gonsewski*, 350 S.W.3d at 107 (citations omitted) (stating that alimony *in futuro* "can be awarded where 'the court finds that there is relative economic disadvantage and that rehabilitation is not feasible.'").

Most importantly, the alimony is also not for a definite duration or amount. ***Averitte***, 2013 WL 357602, at *3. Here, the MDA contains a single provision awarding alimony. Indeed, the nature of the award is contained in a single sentence. Just because there is a second clause in that sentence does not mean two different types of alimony have been established. Rather, there is a single award of alimony *in futuro*, the amount of which is to decrease over time. Neither Wife nor the trial court cited any law in which this Court has held that parties cannot structure an alimony *in futuro* award in this manner. From our research, this appears to be a perfectly acceptable way to structure an award of alimony *in futuro*. *See, e.g.*, ***Head v. Head***, No. M2009-01351-COA-R3-CV, 2010 WL 3853291, at *10 (Tenn. Ct. App. Sept. 30, 2010) (affirming an "award of alimony *in futuro* of $6,400 per month until July 2013, when Wife [was to] turn[] sixty years old, at which time the amount [was to] decrease[] to $4,400 per month and continue[] thereafter until Wife's remarriage or either party's death."). And as this Court explained in ***Kelly***, "[b]ecause the total amount of the award was unascertainable at the time of the award, we must classify the award as being alimony *in futuro*." 2009 WL 1312839, at *2. Wife's argument ignores the fact that the total amount of alimony was not ascertainable at the time the alimony was awarded, but rather the alimony is to continue indefinitely, or until remarriage or death, which are necessary termination conditions of alimony *in futuro*. *See* Tenn. Code Ann. § 36-5-121(f)(2)(A) (emphasis added) ("An award for alimony in futuro *shall* terminate automatically and unconditionally upon the death or remarriage of the recipient."). Additionally, alimony *in futuro* is inherently modifiable. *Id.* Thus, the fact that the parties built in a modification at the outset—it would start at $2,500.00 per month and eventually decrease to $1,500.00 per month—actually supports the conclusion that the award is for alimony *in futuro*, rather than two separate types of alimony.

Wife cites ***Self v. Self***, 861 S.W.2d 360 (Tenn. 1993), in support of her position that even if the 120-month award is subject to termination by the parties' deaths or Wife's remarriage, this Court should still conclude that the 120-month provision is alimony *in solido*. In that case, "[t]he trial court found a rehabilitative alimony award payable monthly for 48 months or until the remarriage or death of the wife, whichever should occur first, to be alimony *in solido*, not subject to subsequent modification." *Id.* at 360. The Tennessee Supreme Court affirmed the trial court. However, that case is distinguishable from this case. In ***Self***, the maximum amount of time the wife could have received alimony was forty-eight months. Here, there is no similar set amount of maximum time for the alimony payments—the award is to continue consistently and indefinitely, with the only automatic terminating conditions being either party's death and Wife's remarriage.

Wife also cites ***Holt v. Holt***, 751 S.W.2d 426 (Tenn. Ct. App. 1988), for the proposition that hybrid alimony "is not unknown in Tennessee." In that case,

> [t]he [divorce] decree incorporated a property settlement agreement in which the defendant-appellant agreed to pay the plaintiff the sum of $80,000 as alimony in solido in graduated payments over the next ten years. In addition

- 12 -

the appellant agreed to pay the plaintiff alimony in futuro in the amount of ten percent of his gross income for five years after the last payment of alimony in solido.

*Holt v. Holt*, 751 S.W.2d 426, 427 (Tenn. Ct. App. 1988). However, as Wife acknowledges, whether the alimony was alimony *in solido* or *in futuro* was not at issue in that case, unlike the case-at-bar. Moreover, while the above language does not directly quote the parties' settlement agreement in *Holt*, the $80,000.00 is explicitly labeled "alimony *in solido*," and the next portion of alimony is explicitly labeled "alimony *in futuro*." Here, the only label in the MDA is "alimony *in futuro*." So *Holt* is further distinguishable from this case to the extent that the hybrid alimony in *Holt* was expressly labeled as such. In this case, the express label chosen by the parties in their MDA supports Husband's position that the alimony as a whole constitutes alimony *in futuro*. *Cf. Schmidt*, 2005 WL 2240960, at *3 (Tenn. Ct. App. Sept. 15, 2005) (emphasis added) (noting that "[d]iscerning the nature of the award can also be challenging *if the language of the decree is not sufficiently descriptive*").

In sum, we hold that the entire award of alimony at issue is alimony *in futuro*, and thus the trial court erred in bifurcating the award into alimony *in solido* and alimony *in futuro*. Our holding on this issue therefore pretermits the issue Husband raises regarding whether it was proper for the trial court to sua sponte raise the issue of how to categorize the alimony. We note, however, that Husband correctly points out that Wife did not raise this issue until the trial court brought it up, after which she began arguing that the MDA provides for alimony *in solido*.[11] Regardless of the trial court's propriety in sua sponte raising this issue, Wife's inaction at the very least does not undermine our conclusion that the parties' intent, at the time the alimony was awarded, was for it to be alimony *in futuro*. *See Planters Gin Co.*, 78 S.W.3d at 890 (citation omitted) ("The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern.").

Therefore, the trial court erred in denying Husband's modification petition as to the 120-month obligation on the basis that it was nonmodifiable alimony *in solido*. The trial court also erred in denying as premature Husband's petition with respect to the alimony scheduled to begin in 2022, because, again, the alimony here is alimony *in futuro*—a single, ongoing obligation, not a future obligation. Finally, the trial court erred in concluding that

---

[11] Generally, parties are not permitted to change their theories after the conclusion of the trial court proceedings. *Cf. State v. Alder*, 71 S.W.3d 299, 303 (Tenn. Crim. App. 2001) ("It is well-settled that an appellant is bound by the evidentiary theory set forth at trial, and may not change theories on appeal."). Here, Wife essentially admitted in her answer to the petition that the alimony was *in futuro* and therefore subject to the statutory presumption regarding cohabitation. Wife only began arguing otherwise after the close of proof. Wife's attempt to distinguish this case from one cited by Husband, *Winne v. Winne*, No. E2018-01050-COA-R3-CV, 2019 WL 5606928 (Tenn. Ct. App. Oct. 30, 2019), on the basis that the wife in that case agreed that the alimony constituted alimony *in futuro*, is therefore less than persuasive.

- 13 -

the issues surrounding the parties' cohabitants were moot based on its erroneous conclusions regarding the alimony.

## B.

The next issue is the trial court's decision to hold Husband in civil contempt of court "for failure to pay alimony and life insurance premiums as Ordered." As Husband notes, he continued paying alimony after he filed his modification petition on June 18, 2018. Husband asks that the question of contempt be remanded in light of our holding that the trial court improperly classified the alimony in this case as non-modifiable. Wife argues that even if there is an insufficient basis for a finding of contempt regarding payments Husband made after he filed his modification petition, Husband failed to pay the full amount of alimony and life insurance even prior to his requested modification; as such, she asserts that there was sufficient evidence to uphold the contempt finding.

We conclude that Husband's proposed resolution of this issue is the better option. Here, the trial court found that Husband willfully failed to pay alimony as ordered in the years 2017, 2018, 2019, and 2020. Certainly, much of that time followed Husband's petition to modify. Any finding that contempt occurred after he sought to modify must therefore be vacated in light of this Opinion. If the trial court determines that Husband's alimony should be modified as of the date of his petition,[12] any arrearages will need to be recalculated, and the amounts he paid after he filed the petition will need to be accounted for. While we express no opinion as to the likelihood of this occurrence, it is possible that a modification will occur such that Husband in fact overpaid post-June 2018. That overpayment could account for any arrearage in 2017. In light of Husband's pending petition to modify alimony, reconsideration of the alimony contempt issue as a whole appears prudent at this juncture. Thus, the trial court's finding that Husband was in contempt for failure to pay alimony is vacated.

We note, however, that the contempt finding was based in part on Husband's failure to pay life insurance premiums, which Husband has not appealed. The trial court's finding of contempt related to the insurance premiums in the amount of $4,991.00 plus interest is therefore affirmed.

## C.

Because we hold that the trial court mischaracterized the alimony and are vacating

---

[12] This Court has held that the question of whether an alimony modification should be retroactive lies in the discretion of the trial court. *See* **Cook v. Iverson**, No. M2014-01206-COA-R3-CV, 2015 WL 7748798, at *6 (Tenn. Ct. App. Nov. 30, 2015) (citing **Howell v. Howell**, No. M2005-01262-COA-R3-CV, 2006 WL 1763660, at *4 (Tenn. Ct. App. June 28, 2006)) ("We leave it to the court on remand to determine whether any modification in alimony should be retroactive and, if so, the date to which it should be made retroactive.").

the denial of Husband's modification petition, we also vacate the trial court's award of attorney's fees and interest to Wife. The trial court reasoned that Wife is entitled to attorney's fees as a "prevailing party" under Tennessee Code Annotated section 36-5-103(c) and a "successful" party under the MDA's Enforcement provision. Pursuant to our holding, Wife is no longer the prevailing or successful party, at least at this juncture. Therefore, the trial court is to reconsider the award of attorney's fees on remand.

The same reasoning applies to the trial court's award of Wife's discretionary costs—it was based on concluding that Wife was the prevailing party, and thus it is vacated and remanded for reconsideration in light of this Opinion. Likewise, Wife's request for attorney's fees on appeal is denied.

## D.

In light of the foregoing analysis, the trial court's judgment on the issue of how the alimony is to be categorized is reversed, and its dismissal of Husband's modification petition is vacated. The trial court's judgments against Husband for alimony arrearages and interest, for alimony of $2,500.00 per month for September and October 2020,[13] and for future alimony payments thereafter are also vacated. Upon remand, the trial court is to reconsider the original issue of whether the alimony *in futuro* should be modified. *See Miller v. McFarland*, No. M2013-00381-COA-R3-CV, 2014 WL 2194382, at *8 (Tenn. Ct. App. May 23, 2014) ("Based on its erroneous conclusion that the alimony at issue was non-modifiable, the trial court did not consider whether Husband was entitled to a modification based upon Wife's remarriage and cohabitation. Accordingly, we remand to the trial court to consider whether Husband is entitled to a modification or termination of his alimony obligation . . . ."); *Finchum v. Finchum*, No. M2012-00975-COA-R3-CV, 2013 WL 593275, at *4 (Tenn. Ct. App. Feb. 13, 2013) ("We hold the trial court erred in ruling that the alimony payments could not be modified. Accordingly, we remand this case to the trial court to determine whether Husband can prove a substantial and material change in circumstances sufficient to warrant a modification or termination of his rehabilitative alimony as of the date of his petition . . . .").

The only portion of the monetary judgment against Husband that shall remain undisturbed is the judgment for $4,991.00 in life insurance premiums because Husband does not dispute that award on appeal. Husband does not explicitly concede that he owes interest on that amount, but he also does not contest the portion of the trial court's judgment ordering him to pay such interest. Therefore, Husband must also pay the interest due on the $4,991.00 he owes in insurance premiums. However, as previously stated, the Life Insurance provision of the parties' MDA only requires Husband to keep in effect the life

---

[13] The trial court likely decided to make explicit orders with respect to September and October 2020 because the trial occurred in August 2020 and the trial court's final order was not filed until November 2020.

- 15 -

insurance policy "so long as [he] is under an obligation to pay alimony." Given our holding in this appeal, Husband's alimony obligations may be modified upon remand. Thus, the trial court's order that Husband pay the life insurance premiums for September and October 2020, and thereafter, is also vacated. Upon remand, the trial court is to reconsider Husband's obligations with respect to life insurance premiums other than the $4,991.00 plus interest previously awarded.

We also vacate the portion of the trial court's final order that awarded Wife a lien against Husband's property, as the bulk of the lien was imposed for the awards of alimony arrearages and attorney's fees, which have been vacated. The portion of the trial court's order mandating that Husband shall be incarcerated if he does not pay the judgment with respect to the alimony arrearages, attorney's fees, and interest as ordered is also vacated. The portion of the trial court's order mandating that Husband be incarcerated for failing to pay the $4,991.00 plus interest for life insurance premiums in the manner prescribed remains undisturbed.

## V. CONCLUSION

The judgment of the Sumner County Chancery Court is affirmed in part, reversed in part and vacated in part. The case is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellee Deborah P. Linn, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

- 16 -